UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN MUCCI, pro se,<br>　　　　Plaintiff, | ) ) ) ) | |
| | ) | CIVIL ACTION NO. 04-CV-12726-DPW |
| VS. | ) ) | |
| MARIANNE SMITH, M.D.,<br>UMASS MEDICAL,<br>　　　　Defendant. | ) ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT, MARIANNE SMITH, M.D.'S,
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this civil action, the plaintiff, John Mucci ("plaintiff"), a pro se prisoner incarcerated within facilities operated by the Massachusetts Department of Correction ("MDOC"), seeks declaratory relief and compensation for purported civil rights violations allegedly committed by the defendant, Marianne Smith, M.D. (the "defendant"). In his Complaint, Mr. Mucci asserts that Dr. Smith sanctioned him without due process of law. The defendant disputes the assertion of a Fourteenth Amendment civil rights violation and, on the basis of the record, and the Affidavit of Marianne Smith, incorporated herein by reference pursuant to Mass. R. Civ. P. Rule 10(c), moves for summary judgment on the plaintiff's claims.

**STATEMENT OF THE FACTS**

1.　　The defendant, Marianne Smith, is a psychiatrist at the Souza-Baranowski Correctional Center ("SBCC"). (See Exhibit 2 attached, Affidavit of Marianne Smith, M.D., ¶1). Dr. Smith has worked for the UMASS Correctional Health Program ("UMCH") since July 1, 1999. (Exhibit 2, ¶3).

2.    UMCH contracts with the Massachusetts Department of Correction (the "MDOC") to provide medical care and treatment to prisoners incarcerated at SBCC. (Exhibit 2, ¶2).  Dr. Smith's duties include providing inmates with psychiatric care, such as regular assessments, diagnostic formulation, treatment plans, monitoring and consultation. (Exhibit 2, ¶3).

3.    Plaintiff was, at all relevant times, a prisoner incarcerated at SBCC under the jurisdiction of the MDOC. (See Exhibit 1 attached, Complaint, ¶1).

4.    Plaintiff suffers from Adult Attention Deficit Hyperactivity Disorder ("ADHD"). (See Exhibit 4 attached, medical records; Exhibit 5 attached, plaintiff's notes and sick call slips). During plaintiff Mucci's incarceration at SBCC, his ADHD was continually treated with Ritalin and other medications. (Exhibit 4).

5.    Prior to October 24, 2004, plaintiff requested that the defendant and the UMCH Health Service staff increase the dose and frequency of his Ritalin medication.  (Exhibit 5). Plaintiff also complained to Dr. Smith about changes in his Ritalin medication and about having to come out of his cell to receive his medication.  (See Exhibit 8 attached, disciplinary report 10/2/104).

6.    On July 3, 2004, MDOC Sergeant, James Hart, filed an incident report stating that John Mucci was exchanging medication with other inmates by way of "reck decks." (Exhibit 8).

7.    On July 13, 2004, Doug Smith, the UMCH Mental Health Director, noticed there was "a long strip of white gummy substance stuck to the inside of the door and a small paper medication cup attached to the gummy substance" in Mr. Mucci's cell. (Exhibit 8). Doug Smith also observed that the paper cup and gummy substance would not be visible if the door was

2

opened. Id. Upon making these observations, Mr. Smith notified Sergeant Hart and shared his concern that Mr. Mucci might be hoarding medication. Id.

8.     On October 24, 2004, licensed practical nurse ("LPN"), Jasen Kavanagh, was told by SBCC's Health Services Unit that inmates were finding ways to divert crushed medication. (See Exhibit 3 attached, progress note by Jasen Kavanagh). Mental Health Coordinator, Judy Garofolo, specifically told Mr. Kavanagh that the plaintiff was sticking his Ritalin medication cups to the back of his door. (Exhibit 3).

9.     While on his medication distribution rounds, Mr. Kavanagh arrived at plaintiff's cell, at which point Mr. Mucci asked for "just his Ritalin." (Exhibit 3). When Mr. Kavanagh crushed the Ritalin and put it into a small plastic medication cup with water, plaintiff became angry and refused the medication. Id. Mucci then said "I cheek my medication, you just can't catch me, but that does not give you the right to float my medication in water. And when I do something stupid and hurt myself or rip out, I am not going to be responsible it is going to be your fault." Id.

10.    At approximately 12:00 noon, Mr. Mucci requested his Ritalin in crushed form. (Exhibit 3). Kavanagh explained to plaintiff that because Mr. Mucci admitted to diverting medication, he would have to be cuffed and brought out of his cell in order to receive the Ritalin. Id. Plaintiff agreed; however, when he received his medication, he pretended to pour the contents of the cup in his mouth. Id.

11.    As the accompanying officer, Sergeant Hart, went to uncuff plaintiff's hands, he noticed a medication cup clenched in Mr. Mucci's fist. (Exhibit 3). Upon realizing that the plaintiff still had the Ritalin cup clenched in his hands, the officers asked to see what Mr. Mucci was holding. Id. Plaintiff refused to open his hand, refused to comply with a mouth check, and

3

threw the medication cup under his bunk. (Exhibit 3; Exhibit 8). Sergeant Hart then placed plaintiff in restraints and removed Mucci from the cell while officers searched for the Ritalin. Id. During this search, officers discovered a partially crushed white tablet on a plastic book, a white pen tube containing white powder, and two razor blades. Id.

12.     The next day, on October 25, 2004, defendant Smith was informed that Mucci had a drug apparatus in his cell, along with a powdery white substance. (Exhibit 6, progress notes by Dr. Marianne Smith). When Dr. Smith approached plaintiff's cell to discuss changes in his medication, resulting from the prior day's incident, Mr. Mucci became irate and verbally abusive. (Exhibit 8).

13.     Both parties agree that on October 25, 2004, Dr. Smith placed a stop order on plaintiff's Ritalin medication. (Exhibit 1, ¶6). However, it should be noted that the medical records indicate that plaintiff received doses of Ritalin through October 27, 2004. (Exhibit 4).

14.     On November 2, 2004, the MDOC disciplinary board reviewed allegations that plaintiff was diverting his Ritalin medication. (Exhibit 1, ¶8). The board concluded that there was insufficient evidence to find plaintiff guilty of misuse of medication and dismissed the charges. (See Exhibit 5 attached, sick call slips and notes from plaintiff; Exhibit 8).

15.     On November 16, 2004, plaintiff and Dr. Smith discussed his Ritalin medication. (Exhibit 6). Specifically, Dr. Smith asked plaintiff if he would like another drug as a substitute for the Ritalin medication. (Exhibit 6). When Mr. Mucci refused, he said that he felt his medication was unjustly stopped, especially since the MDOC disciplinary board dismissed the allegations of misuse. (Exhibit 5 and 6). In response, Dr. Smith told Mucci that clinical decisions are not made based on results of disciplinary hearings, but rather on the clinical data

available to the Health Service Unit, including the staff's observations and communications with MDOC staff. (Exhibit 6).

16.     On November 16, 2004 and January 4, 2005, when Dr. Smith conversed with plaintiff, he appeared less distracted and physically hyperactive. (Exhibit 6). Despite his protests regarding the decrease in his Ritalin, Mr. Mucci's behavior and mental status appear to have improved since his Ritalin was stopped. Id. Dr. Smith also noted, during her November 16th meeting with plaintiff, that the prescribed Seroquel medication, a mood stabilizer to supplement stimulant medication, seemed to calm Mr. Mucci down and decrease his racing thoughts. Id.

## ANALYSIS

I.     SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted when, based on the pleadings, affidavits and depositions, "there is no genuine issue as to any material fact and [where] the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). To succeed on a summary judgment motion, the moving party "need not negate, that is disprove, an essential element of the claim of the party on whom the burden of proof at trial will rest." Id. at 714. Rather, the moving party need only show that proof of the essential element is unlikely forthcoming. Id. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986)(citations omitted).

Here, the record reveals that evidence of a Fourteenth Amendment due process violation by the defendant is unlikely to be forthcoming at trial. The defendant also did not violate the plaintiff's other civil rights when she stopped his Ritalin medication. For example, there is no

961089v1

evidence in the record to support an Eighth Amendment deliberate indifference violation. Given that evidence of civil rights violations is unlikely to be forthcoming at trial, the defendant is entitled to summary judgment as a matter of law.

II.    DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM BECAUSE DR. SMITH DID NOT DEPRIVE MR. MUCCI OF DUE PROCESS.

The evidence required to prove a Due Process violation is unlikely to be forthcoming at trial. Plaintiff alleges that Dr. Smith sanctioned him without due process when she stopped the order on his Ritalin medication, even after the MDOC disciplinary board dismissed allegations of drug misuse. (Exhibit 1, ¶A).

Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, no state shall "deprive any person of life, liberty or property, without due process of law." Given that the history of the Due Process Clause revolves around protecting the individual against arbitrary action by the government, *negligent* conduct by a state official, even though causing injury, does not constitute a deprivation. Parratt v. Taylor, 451 U.S. 527 (1981). The Due Process Clause is not intended to "supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." Daniels v. Williams, 474 U.S. 327, 332 (1986).

A.    Plaintiff's Due Process Claim Fails As a Matter of Law Because Mr. Mucci Was Not Deprived of a Constitutional Right.

Under the Fourteenth Amendment, in order to show that an inmate was denied due process of law, plaintiff must point to the deprivation of a substantive right. Riva v. Fair, 1988 U.S. Dist. LEXIS 17938 (1988). These constitutional substantive rights include a right to adequate food, shelter, clothing and medical care. Youngberg v. Romeo, 457 U.S. 307, 315 (1982).

6

Here, the plaintiff does not allege that Dr. Smith deprived him of a substantive right. Plaintiff asserts that he should be put back on Ritalin because the MDOC dismissed the drug claim against him. (Exhibit 1, ¶8). However, this claim does not give rise to a constitutionally protected interest. For example, Mr. Mucci does not specifically assert an Eighth Amendment right, claiming that Dr. Smith was deliberately indifferent to his serious medical need. (Exhibit 1). At most, plaintiff's assertion implies that defendant failed to base her medical decisions on the MDOC disciplinary board's conclusions and readminister plaintiff's Ritalin. However, this is not grounds for a Fourteenth Amendment violation because medical decisions by the UMCH are independent of disciplinary decisions by the MDOC board.

**B.      Plaintiff's Due Process Claim Fails As a Matter of Law Because Defendant's Medical Judgments are Independent of the MDOC's Disciplinary Rulings.**

The MDOC disciplinary board's decisions are unrelated to medical decisions by the UMCH doctors.    According to the MDOC Manual, governing prison health care in Massachusetts prison facilities, "matters of medical, mental health and dental judgment are the sole province of the responsible physicians, psychiatrists or dentists." 103 DOC 610.01(2).

The UMCH staff makes their medical judgments independent of the MDOC's disciplinary conclusions. (Exhibits 2 and 6). On October 24, 2004, Dr. Smith received a report from LPN Kavanagh stating that plaintiff was diverting his Ritalin medication. (Exhibits 2, 3 and 6). There were reports dating back to July 2004, in which plaintiff was suspected of hoarding Ritalin medication. (Exhibit 8). By plaintiff's own admission, he told Kavanagh on October 24, 2004, that he was "cheeking his medication." (Exhibit 3). A white pen tube and razor blades were found in Mr. Mucci's cell on the same day that he pretended to take his Ritalin and then tried to hide it from LPN Kavanagh. (Exhibits 3 and 8). *After* being informed of these incidents, Dr. Smith then decided to stop Mr. Mucci's Ritalin medication. The sequence of

events demonstrates that defendant's decision was not intended to punish plaintiff; rather, it was grounded in plaintiff's own admission and the evidence.

III.  EVEN IF PLAINTIFF ASSERTED AN EIGHTH AMENDMENT CLAIM AGAINST DR. SMITH, SUMMARY JUDGMENT IS STILL APPROPRIATE BECAUSE DEFENDANT WAS NOT DELIBERATELY INDIFFERENT TO PLAINTIFF'S SERIOUS MEDICAL NEEDS.

Mr. Mucci does not assert an Eighth Amendment violation in his Complaint. (Exhibit 1). However, even if this Court infers from the alleged facts that Mr. Mucci intended to assert this claim, summary judgment is still appropriate because the evidence does not indicate that plaintiff's medical needs went unmet or were deliberately ignored.

It is clear that "[i]n order to establish that medical mistreatment constitutes a violation of the Eighth Amendment, a prisoner must show 'acts or omissions' sufficiently harmful to evidence deliberate indifference to serious medical needs ." Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985), quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976).  In a fairly recent pronouncement, the United States Supreme Court reaffirmed Estelle, expressly holding that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

As illustrated by both the holding in Farmer as well as the principal case law, in the context of §1983 claims for infliction of cruel and unusual punishment, the federal courts have applied the standard enunciated in Estelle strictly and have defined "deliberate indifference" narrowly. See e.g., Ferranti v. Moran, 618 F.2d 888 (1st Cir. 1980); Layne v. Vinzant, 657 F.2d 468 (1st Cir. 1980).

8

As set forth above, if a plaintiff satisfies the first prong of the <u>Estelle</u> standard by showing his "serious medical need," something more than negligent treatment must then be alleged to state a claim for violations of the Eighth Amendment.    To establish deliberate indifference, the plaintiff must prove that the defendant had a culpable state of mind and intended wantonly to inflict pain. <u>DesRosiers v. Moran</u>, 949 F.2d 15, 19 (1st Cir. 1991).

A.    <u>Plaintiff's Deliberate Indifference Claim Should be Dismissed Because Mucci Fails to Demonstrate That He Had a Serious Medical Need.</u>

A medical need is "serious" if it has been "diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity of a doctor's attention." <u>Gaudreault v. Municipality of Salem, Massachusetts</u>, 923 F.2d 203, 208 (1st Cir. 1990) citing <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3rd Cir. 1987).

Here, the evidence demonstrates that plaintiff may not need Ritalin medication to treat his ADHD.  Based on the events starting in July 2004 and culminating on October 24, 2004, it appears that plaintiff was not properly taking his Ritalin medication. (Exhibit 3).  In July, when plaintiff may have been off his Ritalin medication, Mr. Mucci did not appear hyperactive to the UMCH staff. (Exhibit 4, no mention of hyperactivity).

Even if plaintiff was taking his Ritalin prior to October 24th, *after* defendant's stop order took effect, plaintiff's behavior remained calm and his mental status actually improved. (Exhibit 6).    On January 4, 2005, defendant Smith noted that, during her meeting with Mr. Mucci, he was not hyperactive, and plaintiff's only apparent functional impairment was his inability to concentrate when reading.  <u>Id</u>.  Plaintiff also appeared less irritable and hostile, and less threatening once he was taken off the Ritalin.  <u>Id</u>.

961089v1

B.    Plaintiff's Disagreement With Dr. Smith's Decision to Stop His Ritalin Distribution Does Not Make Defendant Deliberately Indifferent to Mr. Mucci's Medical Needs.

The defendant properly treated plaintiff's mental condition when she stopped his order of Ritalin. To establish an Eighth Amendment violation, Mr. Mucci must prove that, along with being aware of a serious need for Ritalin, defendant blatantly ignored that need. Farmer, 511 U.S. at 837. An inmate's belief that a doctor's treatment was inappropriate or unduly delayed is insufficient to prove that the medical treatment violated the Eighth Amendment. 103 DOC 610.01; Wadood v. Nathan, 91 F.3d 1023, 1025 (7th Cir. 1996). In Estelle, the Supreme Court held that questions of … forms of treatment are matters for medical judgment. Estelle, 429 U.S. at 107-108. Allegations of disagreement over the appropriate course of treatment, such as a dispute over an exercise of professional judgment, falls short of evidencing an Eighth Amendment constitutional violation. Id. at 106.

In the instant case, the defendant admits that she stopped plaintiff's Ritalin medication order. However, Dr. Smith did so because substantial evidence indicated that plaintiff was diverting and misusing the Ritalin. (Exhibits 2, 3 and 8). DEA policy governing prescriptions of controlled substances states that a doctor should exercise good judgment when a patient is found to be diverting an illicit drug. (Exhibit 7). Without evidence to prove Dr. Smith's assessments were unfounded, plaintiff's belief that Dr. Smith's stoppage order was inappropriate, and even his claims that he suffered pain as a result of missing the doses of Ritalin, does not amount to deliberate indifference by the defendant, as required by the Estelle standard.

Moreover, the medical records indicate that Dr. Smith went to great lengths to treat Mr. Mucci's ADHD. Even after defendant stopped plaintiff's Ritalin, she offered to replace his Ritalin with another drug. (Exhibits 2 and 6). After plaintiff refused this offer, Dr. Smith

961089v1

continually reviewed plaintiff's mental status and prescribed Seroquel, a mood stabilizer, to calm Mr. Mucci down and reduce his racing thoughts. (Exhibit 6). Given that the evidence does not indicate that defendant's medical decision was improper based on the records, if plaintiff had asserted an Eighth Amendment claim against defendant Smith, it would fall short of the standard required under Estelle.

C.    It is Unlikely Plaintiff Will Prove That Defendant's Order to Stop Plaintiff's Ritalin Medication Shocks the Conscience.

Even if this Court does find that the plaintiff has a serious medical need and that Dr. Smith's medical decision was improper, an Eighth Amendment claim would still fail because defendant's medical decisions do not "shock the conscience." Under Massachusetts law, in cases where the Eighth Amendment dispute concerns the choice of a particular course of treatment, the plaintiff must prove that the treatment was so clearly inadequate so as to "shock the conscience." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991). The Massachusetts Board of Registration in Medicine and Drug Enforcement Agency's ("DEA") policies governing treatment with controlled substances specifically states that "prescribing controlled substances requires special caution because of their potential for abuse and dependence. Good judgment should be exercised so that diversion to illicit uses is avoided and dependence is minimized." (See Exhibit 7 attached, DEA controlled substance prescription policy).

In the instant case, defendant stopped plaintiff's order of Ritalin medication after there was substantial proof that he was misusing the drug. (Exhibits 2, 4, 6 and 8). Defendant based her decision to stop Mr. Mucci's Ritalin on various MDOC incident reports dating back to July 2004, LPN Kavanagh's progress notes, and the paraphernalia found in plaintiff's cell on October 24, 2004. (Exhibits 3 and 8). Specifically, on the same day Sergeant Hart found a white tube and razor blades in plaintiff's cell, Mr. Mucci told LPN Kavanagh that he was "cheeking his

11

medication." (Exhibits 3 and 8). On that same day, plaintiff was also caught pretending to take his Ritalin and then trying to hide the medication cup from Mr. Kavanagh and Sergeant Hart. Id. Dr. Smith's decision falls soundly within the DEA's policy, encouraging doctors to avoid illicit use and diversion by exercising their independent judgment. (Exhibit 7).

Without any evidence indicating that it was unreasonable for Dr. Smith to believe Mr. Kavanagh's progress note, or evidence explaining plaintiff's possession of a razor blade and straw in his cell, a deliberate indifference claim against defendant will fail because defendant's decision to stop the Ritalin order does not "shock the conscience."

Even taking the plaintiff's pleaded allegations as true, Mr. Mucci fails to prove that the defendant violated his due process rights or that she was deliberately indifferent to his serious medical needs, as required under the Fourteenth and Eighth Amendments. Thus, plaintiff's civil rights claim must fail as a matter of law.

## CONCLUSION

For all of the foregoing reasons, the defendant, *Marianne Smith, M.D.*, respectfully requests that this Honorable Court enter summary judgment, in her favor, on the plaintiff's claims in this matter.

|  | The Defendant,<br>MARIANNE SMITH, M.D.<br>By her attorneys, |
|---|---|
| I hereby certify that a true copy of the above document was served upon the *pro se* plaintiff by mail on the 9th day of May, 2005. | /S/ Lisa R. Wichter |
| /S/ Lisa R. Wichter | James A. Bello, BBO #633550<br>Lisa R. Wichter, BBO #661006<br>MORRISON MAHONEY LLP<br>250 Summer Street<br>Boston, MA 02210<br>(617) 439-7500 |
| Lisa R. Wichter | |

961089v1

# EXHIBIT 1

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS



CIVIL ACTION
NO. _____

John MUCCI, pro se,
        Plaintiff,

vs.

Marianne SMITH, MD,
U.Mass Medical,
        Defendant.

=====================

## VERIFIED CIVIL RIGHTS COMPLAINT

### PARTIES

1). Mr. John Mucci is a resident of Massachusetts and a citizen of the United. He is also a prisoner at the Souza-Baranowski Correctional Center (SBCC) in Shirley, MA. The address there is : Box 8000, Shirley, MA 01464.

2). Doctor Marianne Smith is also a resident of Massachusetts and a citizen of the United

— 1 —

States. She is being sued individually as well as officially for acts committed under color of state law. She works, and may be served, at: Box 8000, Shirley, MA 01464.

## JURISDICTION

3.) This Court has jurisdiction pursuant to 42 U.S.C. § 1983. The acts were committed by defendant Smith, a state employee, in the performance of here job.

## FACTS

4.) Paragraphs 1-3 are incorporated herein by reference.

5.) On October    , 2004, the plaintiff, while housed on the Special Management Unit (SMU) of SBCC, was accused of misusing his medication.

6.) On October 25, 2004, defendant Smith put a stop order on plaintiff's meds.

7.) Plaintiff maintained that there was no truth to the charges and defended himself against

— 2 —

the charges.

8.) On November 2, 2004, a disciplinary board heard the matter and dismissed the charges relative to misuse of medication.

9.) Defendant Smith found me guilty before I was afforded due process, and she imposed her own punishment.

10.) In SMU at SBCC, medication is either crushed and handed through the "food slot" or else a prisoner is handcuffed, his door is opened, and his ingestion of the uncrushed pills is monitored.

11.) The defendant had alternative, reasonable means of administering the meds without stopping them all together.

## CLAIMS FOR RELIEF

A. In depriving him of his duly prescribed medication prior to a finding of guilt relative to charges of misusing his medication, defendant Smith imposed upon defendant a sanction without due process of law in

— 3 —

violation of the 14th Amendment to the United States Constitution.

<u>REQUEST FOR RELIEF</u>

The demands of due process are simple. To deprive Mr. Mucci of a medication to which he is legally entitled based on an unsubstantiated allegation (a charge eventually thrown out as unsupported by facts) that he had somehow "misused" it is illegal. There must be some process. Given the alternative measures available to allay any security concern, defendant Smith's decision violated plaintiff's rights.

Therefore, plaintiff asks that:

A.) the court grant compensatory damages for emotional suffering;

B.) punitive damages as a deterrent;

C.) a declaration of rights (M.G.L. c. 231 <u>et seq</u>)

D.) and any other such relief to secure the rights of the parties.

Respectfully submitted,

John Mucci

John Mucci  Pro-Se
Box 8000
Shirley, MA 01464

11/24/04

— 4 —

# VERIFICATION

I, John Mucci, hereby verify and swear that the facts as stated in the attached complaint are true and also accurate to the best of my knowledge, recollection and belief.

Sworn to under penalty of perjury.

X _John Mucci._
John Mucci

DATE: 11 / 24 / 04

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN MUCCI, pro se,<br>       Plaintiff,<br><br>v.<br><br>MARIANNE SMITH, MD,<br>UMASS MEDICAL,<br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION NO.: 04-CV-12726-DPW |

## AFFIDAVIT OF DEFENDANT, MARIANNE SMITH, M.D.

I, Marianne Smith, M.D., on oath depose and swear that:

1. I am a psychiatrist, licensed to practice in the Commonwealth of Massachusetts. Specifically, I am a psychiatrist at the Souza-Baranowski Correctional Center ("SBCC"), employed by UMASS Correctional Health ("UMCH").

2. UMCH is a contractual provider distributing medical care and treatment to inmates incarcerated at SBCC.

3. I have been a psychiatrist at SBCC since July 1, 1999, and I was the psychiatrist treating plaintiff during the time frame discussed in his Complaint. My duties as a psychiatrist at SBCC focus on providing inmates with psychiatric care, such as regular assessments, diagnostic formulation, treatment plans, monitoring and consultation.

4. I am familiar with the plaintiff's allegations in this matter, and I have personal knowledge of the medical care and treatment Mr. Mucci received while remanded to the custody of SBCC.

5. Attached hereto are true and accurate copies of pertinent portions of the plaintiff's medical records. (See Exhibits 3, 4, 5, and 6).

6. Contrary to plaintiff's allegations, I did not deprive Mr. Mucci of his due process rights, and I prescribed him adequate and proper medication for

961156v1

his Adult Attention Deficit Hyperactivity Disorder ("ADHD"), continuously following the appropriate protocol on prescription of controlled substances.

7.    Review of plaintiff's medical records indicates that my treatment of Mr. Mucci's ADHD was appropriate and adequate.

8.    Specifically, prior to October 24, 2004, plaintiff was routinely given Ritalin to treat his ADHD. (See Exhibit 4 attached, medical records).

9.    On October 25, 2004, I reviewed LPN Kavanagh's progress notes from the previous day and learned that Mr. Mucci had been caught misusing and diverting his Ritalin medication. I also learned that white powder, a white straw tube, and razor blades were found in the cell. (See Exhibit 3 attached, Jasen Kavanagh's progress notes).

10.   Mr. Kavanagh's report stated that Mr. Mucci admitted to diverting his medication, saying "I cheek my medication, you just can't catch me, but that does not give you the right to float my medication in water. And when I do something stupid and hurt myself or rip out, I am not going to be responsible it is going to be your fault." (Exhibit 3).

11.   I also reviewed Sergeant James Hart's October 24, 2004 incident report stating that, in addition to the paraphernalia found in Mr. Mucci's cell, plaintiff refused a mouth check and was verbally abusive toward Mr. Kavanagh and the guards. (See Exhibit 8 attached, Sergeant Hart's incident report).

12.   On October 25, 2004, I tried to inform plaintiff of future changes in his Ritalin medication, however, as I approached his cell, plaintiff became verbally abusive, at which point I immediately left. (See Exhibit 8 attached, disciplinary report).

13.   The Massachusetts Board of Registration in Medicine and the Drug Enforcement Agency's policies, governing the prescription of controlled Substances, states that "prescribing controlled substances requires special caution because of their potential for abuse and dependence. Good judgment should be exercised so that diversion to illicit uses is avoided and dependence is minimized." (See Exhibit 7 attached, Massachusetts Board of Registration in Medicine protocol).

14.   Based on these guidelines, the UMCH staff observations, and my own clinical judgment, I found it necessary to reassess plaintiff's need for Ritalin and placed a stop order on the medication.

15.   While we did not substitute another drug for the Ritalin, Mr. Mucci

961156v1

2

remained on the drug Seroquel, a mood stabilizer.  Since the stop order
has been in place, plaintiff still complains that he is unable to concentrate,
but he appears more calm and less distracted and hyperactive.  (Exhibit 6).

16.    On November 16, 2004, I met with plaintiff and offered to replace his
Ritalin medication with another ADHD drug.  Plaintiff refused this offer.
During the meeting Mr. Mucci told me that he was upset because his
medication was unjustly stopped even after the MDOC disciplinary board
dismissed the allegations of misuse.

17.    In response, I told Mr. Mucci that the decision to stop his Ritalin
medication was based on clinical data, including UMCH staff observations
and communications with MDOC staff.  I explained that the state set forth
guidelines on stopping medication to prevent misuse and diversion for
illicit purposes.  I also told plaintiff that my decision to stop his Ritalin
was independent of the results of his disciplinary hearing, and instead
based on my clinical judgment.  (See Exhibit 6 attached, my progress
notes).

18.    Throughout my time working with Mr. Mucci, I have never sanctioned
him without due process, nor was I deliberately indifferent to his medical
needs.  Rather, I followed UMCH protocol regarding ADHD treatment,
and provided plaintiff with adequate medication.

19.    The above statements are true and accurate and based on my personal
knowledge.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY**

THIS _second_ DAY OF _May_ , 2005.

Marianne Smith, M.D.

# EXHIBIT 3

# UMASS CORRECTIONAL HEALTH

### PROGRESS NOTES

SBCC
Institution

NAME: Mucci  John          ID # A89402   D.O.B. 1-10-71

| DATE | TIME | NOTES |
|------|------|-------|
| 102404 | 0800 | During medication Administration Rounds, I was told by DOC Staff that inmates where still finding ways to divert crushed medication. They also stated that they were told by MHClinitia Judy, that Mucci was sticking medication cups to the back of his door. When I arrived at Inmate Mucci's cell, he asked for just his Ritalin. I crushed his Ritalin and put it into a small plastic medication cup c̄ water. He became instantly angry - Refused his medication and threw his orange Juice on the teer. I explained to him it was not personal and I was not accusing him of diverting medication. I did it because medication diversion has become an increasing problem in the SMU. He stated "I cheek my medication, you just can't catch me." "but that does not give you the right to Float my medication in water." "And when I do something stupid and hurt myself For Rip out I am not going to be responsible it is going to be your fault." At appox 9AM I went back to his cell to offer to pull him out of his cell so he could take all of his prescribed medication. He would not listen to anything I was trying to say ——> |

Page 1 of 3  Jason Kavanaughipa

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: Mucci John          ID # A89402      D.O.B. 1-10-71

| DATE | TIME | NOTES |
|---|---|---|
| Continue From Previous Page → | | And his anger only seemed to increase- He stated "I am refusing to take any of my medication if I have to come out of my cell or it gets put in water." |
| | 1200 | at approx 1200 during medication rounds, Inmate mucci requested just his Ritalin so I could crush it and he would not have to Come out of his cell. I explained that due to him admitting that he diverts his medication he would have to be cuffed up and brought out of his cell, he agreed. When he received his medication, he pretended to pour the contents in his mouth, he then Crushed the paper cup, turned around and threw the paper cup into the toilet. -The officers them made him Flush the Toilet. The officers then closed his door and opened his wicket so the cuffs could be removed. There was a medication cup clenched in his Fist. Inmate mucci threw an empty medication cup in the toilet that he already had in his hand, the medication cup Full of Ritalin was Still in his possesion. When the officers realized he still had the Ritalin clenched in his hand, They asked to see what he was → |

Page 2 of 3  Jason Kavanagh RN

7113W 1/95

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: Mucci John          ID # A89402    D.O.B. 1-10-71

| DATE | TIME | NOTES |
|------|------|-------|
| Continue From Previouse Page → | | holding in his hand. He refused and threw the med cup under his bunk. The officers then removed him from his cell and searched see searched it. They found a hard covered book c̄ crushed up lines of a white medication a straw and two Razor blades. _Jason Kavanaggh RN_ |

7113W 1/95

# EXHIBIT 4

# UMASS CORRECTIONAL HEALTH TREATMENT ADMINISTRATION RECORD

Institution: Sbcc

MONTH: OCT    20__

| START DATE | STOP DATE | INT | DRUG - DOSE MODE - INTERVAL | HR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8-13 | 11-13 | | Mylanta 30cc PO QID PRN x90d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9-9 | 12-9 | | Prozac 40mg PO 6AM x90d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9-9 | 12-9 | | Remeron 30mg PO QHS x90d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9-9 | 12-9 | | Wellbutrin SR 150mg PO BID x90d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9-11 | 10-11 | | Adderal 20mg PO QID Crush x30d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9-28 | 10-28 | | Ritalin 20mg PO QID Crush x30d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 10-13 | | | Tylenol 650mg PO x1dose | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

NS=NO SHOW   DC=DISCONTINUE   R=REFUSED

ALLERGIES:

DOB/INMATE #: A89402   1-16-71

LOCATION: L3 # 39 20

NAME: Tucci - John

B027 Rev. 08/01

# UMASS CORRECTIONAL HEALTH TREATMENT ADMINISTRATION RECORD

Institution _____

MONTH _____ 20___

| START DATE | STOP DATE | INT | DRUG - DOSE MODE - INTERVAL | HR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10-20 | 10-22 | by | Bactroban PRN 1 plug QD x 3day | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 10/13 | 10/25 | SAV | Ritalin 20mg po tid x 1day # Crush # | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 10/26 | 10/26 | SAV | Ritalin 20mg po bid x 1d # crush # | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 10/27 | 10/28 | SAV | Ritalin 20mg po qd x 1d # crush # | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Murru, John | | |

NS=NO SHOW   DC=DISCONTINUE   R=REFUSED

ALLERGIES: _____

DOB/INMATE #: A89402 1-1D-71

LOCATION: L3 #20

NAME: Murru, John

8027 Rev. 08/01

**UMASS Correctional Health TREATMENT ADMINISTRATION RECORD**

MONTH NOV    20 0?

Institution: Sbcc

| START DATE | STOP DATE | INT | DRUG - DOSE MODE - INTERVAL | HR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/13 | 11/3 | by | Mylanta 30cc PO QID PRN ×90d | P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9/9 | 12/9 | by | Prozac 40mg PO QAM ×90d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9/9 | 12/9 | by | Remeron 30mg PO QHS ×90 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9/9 | 12/9 | by | Wellbutrin 150mg PO BID ×90d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9/28 | 10/28 | by | Ritalin 20mg PO QID ×30 | 8K NOON 4PM 8PM | | | | | | | | | | | | | Dc'd | | | | | | | | | | | | | | | | | | | |
| 11/5 | | ag | Sanitarium for out ×1 time | | | | | M | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 11/11 | | | Bacitracin ×1 for wt on head | | | | | | | | | | | | | | | B | | | | | | | | | | | | | | | | | |

| STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

NS=NO SHOW    DC=DISCONTINUE    R=REFUSED

ALLERGIES: Lithium

DOB/INMATE #: A89402  1-b-71

LOCATION: G3 #30 26

NAME: Mucci John (1b2)

8027 Rev. 08/01

# UMASS CORRECTIONAL HEALTH

## PROBLEM LIST

MCI-Con.
_____
Institution

NAME: _Mucci, John_____  ID # A~~838444~~ 89402  D.O.B. _11/0/71_

MEDICATION ALLERGIES: ___(NKDA)~~n~~ LiCO3_____

| Date Identified | Significant Health Problems | Healthcare Practitioner Signature | Date Resolved | Healthcare Practitioner Signature |
|---|---|---|---|---|
| 4/14/04 | Q5(+) suicide attempt | Braun Carsuero | | |
| 5/5/04 | PTSD | Klar LICJW | | |
| " | ADHD | " | | |
| 11-16-04 | ETOH dependence | M Smith, MD | | |
| 11-16-04 | Poly substance abuse | M Smith, M.D. | | |
| 11-16-04 | Medication misuse while incarcerated | M Smith, M.D. | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

8024 Rev. 1/95

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: Mucci, John          ID # A 89402     D.O.B. 1-10-71

| DATE | TIME | Psych        — chart NOTES available |
|------|------|-------------|
| 7-13-04 | 4:15 pm | Seen @ cell door in SMU per his request. Pt says the ritalin "wears off" and he has trouble concentrating a few hrs p̄ he receives a dose. Is asking for an ↑ in ritalin. He also mentioned wellbutrin ad wanted to know if it would be helpful. He stated "a cousin takes wellbutrin ad ritalin" ad says "she's never been better." He also mentioned that a ♂ who molested him when he was a child was recently arrested for molesting other children. He is happy about this but at the same time is experiencing "a the bad memories." He says his parents are helping him file criminal charges against this individual. He showed writer a copy of Driven to Distraction, a well known book about ADHD, that his mother sent him. He stated "this book describes me." He said he was taking notes ad trying to learn everything he could about ADHD. Of note, pt's name was mentioned in an incident report ad note which stated another inmate was trying to pass 2 Klonopin tablets to him.
MSE: well groomed & unshaven; polite + cooperative c̄ euthymic mood + affect. T.P. logical, s̄ FTD; s̄ psychosis s̄ SI/HI. Future oriented re getting out of SMU.
A/ ADHD (by hx that is self-reported) — states he is still symptomatic |

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: Mucci, John          ID # A 89402    D.O.B. 1-10-71

| DATE | TIME | NOTES |
|------|------|-------|
| | | Psych — chart not available — note continued. |
| 7-13-04 | | Maj Depression — in remission |
| | P1 | Discussed ↓ing ritalin to SR preparation which he agreed to do. Also discussed trial of Wellbutran which he also agreed to ( this is preferable to ↑ing ritalin dose in sxa someone who has abused substances in and out of prison). F/u in 1-3 mo + sooner prn — M Smith MD |

7113W 1/95

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

Institution: SBCC

NAME: Mucci, John     ID # A89402     D.O.B. 1-10-71

| DATE | TIME | NOTES |
|------|------|-------|
| 7-21-04 | noon | Psych - Admin<br>Pt requested to have ritalin SR at 4pm instead of 8pm — Order did - Mr.Smith, MD |
| 7-28-04 | 2 pm.<br><br>seen in VR in SMU. | Psych - Admin<br>Seen 7-27-04, Chart not available until today. Pt was angry @ writer for not seeing him sooner. Was angry that his demand for ↑ ritalin was not immediately addressed al angry that writer had not spoken to his mother. Pt's ma has made numerous calls to SBCC administration al has been referred to DOC Health Services per policy. Pt was informed of this. He stated he was having "a hard time" al is feeling "very agitated and uptight." Is nervous about possibly having to testify in court related to his sexual victimization as a child. Is having ↑ difficulty sleeping, bad dreams when he does sleep, al anxiety during the day. He is passing the time reading books. He says he is finishing 400 pages/day al that his mother is having a hard time sending him books fast enough. He claims the ritalin wears off between doses al feels he needs "3 doses." Writer suggested that the dosing sched be split up to Q10, but that he continue on the same total dose per day.<br>—> |

7113W 1/95

# UMASS Correctional Health
## PROGRESS NOTES

**NAME:** Mucci, John          **ID#:** W83736          **D.O.B:** 1/10/71

**DATE:** July 26, 2004          **TIME:** 9:35 AM

**D:** Met with inmate at cell door in L3 unit per routine mental health rounds/request. Inmate stated that his mother had called for the mental health services three times because of his need for medication. According to inmate, he is currently taking Ritalin (AM, PM), Wellbutrin (AM), and Prozac (PM). He stated that his mother (who is a surgeon) wants him to have an increased dose of Ritalin and has not received a call back from mental health services. This writer observed that the primary practice within the institution limited family contacts: (1) without consent –inmate not being a minor, (2) staff could not identity callers. Inmate made a sound when this writer noted that stating "what do I have to do?" Then proceeded to list several people with whom he would file complaints. Inmate stated that he "did not know why you (this writer) asks if everything is all right, if you can't do anything". Informed inmate that this writer was not a prescriber but would inform MD of his request. Inmate noted that he wanted her to come and speak with him regarding the medication. Noted to inmate the 90-day treatment schedule for prescriber's and that if he was experiencing a problem he could notify her in advance. Inmate reported that he had. Encouraged inmate to continue his supportive relationship with his family.

**A:** Several times during the conversation, inmate was asked to speak appropriately with this writer. Agitated, Alert, and oriented. Irritable mood with congruent affect. Process of thought direct. Content focused on obtaining medication. No observed signs of psychosis. Observed no indication of inmate's intent to harm self or others. Appeared stable at present.

**P:** F/U per segregation protocols, treatment plan, and prn. Notify MD of request

Caroline G. Gray, LCSW

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: Mucci, John    ID # A89402    D.O.B. 1-10-71

| DATE | TIME | Psych — Admin NOTES |
|------|------|---------------------|
| 7-28-04 | 2:15 pm | Writer also discussed low dose remeron @ hs for sleep which he also agreed to try. R+B reviewed. Pt is also upset re possibility of x-fer + NCCI. MSE: Initially angry al demanding al intimating that his lawyer would be contacting writer. He later calmed down al expressed self appropriately in a non-demanding al non-threatening manner. Overall mood + affect mildly anxious al angry, T, P, logical, s paranoia; s delusions; s AH/VH; s SI/HI. Forward thinking re contact c lawyer, family al about getting moved out of SBCC segregation. |
| | A/ | ADHD — well controlled Situational anxiety al sleep disturbance |
| | P/ | start remeron 15 mg qhs Δ dosing sched of ritalin SR to QID. M. Smith, MD |
| | | Psych |
| 8-10-04 | 4:30 pm | Seen on unsched visit. Pt asked to see writer while writer was on the SMU tier seeing other inmates. He reported the QID dosing of ritalin was "much better than twice a day." Says remeron is somewhat helpful but he is still having trouble sleeping. He asked for ↑ dose. "Otherwise I'm great doc." Mood + affect euthymic — A/ Residual insomnia P/ will ↑ remeron to 30 mg — F/u in 2-3 mo + prn — M Smith, MD |

7113W 1/95

# UMASS CORRECTIONAL HEALTH

## PHYSICIAN'S ORDER

### PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Mucci John_     ID NUMBER _A 89402_   D.O.B. _1-10-71_

INSTITUTION _SBCC_ _____ ALLERGIES _Lithium_

DATE _8-13-04_   TIME _1:30pm_

ORDERS

M.H. ~~RTN~~ D/C ritalin SR when regular
ritalin is available,
- Ritalin 20mg PO QID x 30d (crush)
- Mylanta 30cc PO Q.I.D prn GI S.E.
from crushed ritalin x 90d —

M Smith, M.D,

NOTED

Sue Garepy RN
8-13-04 /30

SIGNATURE _____

Interchange is mandatory unless the prescriber writes the words
"no substitution" in this space:

PRINT NAME _M Smith MD_

06 Rev. 4/01                                        Original (White): Retain...

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: Mucci, John          ID # A89402     D.O.B. 1-10-71

| DATE | TIME | NOTES |
|------|------|-------|
| | | **Psychiatry** |
| 8-13-04 | 1:30 p.m. | Pt seen briefly @ cell door in SMU to inform him that all SR ritalin will be changed to regular ritalin and all regular ritalin will be crushed 2° to the high abuse potential of the drug in this institution. Pt understood and accepted the change. He stated he was sleeping "great" ō the change in regimen. Denies SE, concentration + atten reported to be "great." |
| | A/P | Stable — continue current meds x ∆ to regular ritalin. F/U in 2-3 mo + sooner prn — ____ Smith MD |
| | | Psych — Admin |
| 8-20-04 | 3:30 pm | Pt requested to take prozac in a.m., order changed. ____ Smith MD |

7113W 1/95

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

Institution: _SBCC_

NAME: _John Mucci_   ID # _W83726_   D.O.B. _1/10/71_

| DATE | TIME | NOTES |
|------|------|-------|
| 8/25/04 | 2pm | ① I/m seen for intake 1:1 contact and per sick slip request. I/m reports he would like to replace his Ritalin w/ Adderall, "B/c the ritalin wears off." I/m then discussed recent struggles w/ PTSD sx's re: Molestation when he was 10 y.o. Described nightmares containing images of his trauma, as well as frequent flashbacks "when he's trying to concentrate on something." Reports he wants to begin processing his trauma w/ this writer, "I need your help — I'm asking for help — I'm reaching out." Also reported not having any contact w/ his P.O. ① as a significant stressor. I/m does report that "he has a clear head now that he's sober." ④ I/m calm & cooperative — Articulate — logical/organized ∅ psis. Euthymic mood congruent w/ affect. ⊕ appetite ⊕ sleep ∅ concentration. Denies SI/HI. neat & clean. A & O x3. |
| 8mn | Revised | ⑤ F/u per tx plan protocol. —————  _Jim Baldi LICSW_  _C. Albrecht, LICSW_ ——— |

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: Mucci John    ID # W83724    D.O.B. 1·10·71

| DATE | TIME | NOTES |
|------|------|-------|
| 9/4/04 | 1040 AM | medic I |
| | 23 | S I/m seen at cell door in response to a sick slip. I/m was lying on bed reading, and |
| Demerchant | | stated that he didn't need to see MH nor had he put in a sick slip. When prompted to sick slip (med issue), I/m stated, "oh yeah. that. I want my meds changed." writer asked I/m if they were changed recently, and I/m stated "well they changed them. But I want my meds changed to the way I want them, not how they want them. I'm the one who has to take them." A) Not willing to engage, therefore difficult to assess. Appears A+O×4. Does not appear to be at current risk of harm to self/others. P) I/m will continue to be seen per seg rounds prn, and per tx plan. Crispin Demerchant, MSW CH Sorrell, LICSW |

7113B 1/95                          MENTAL HEALTH

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS



CIVIL ACTION
NO. _____

John MUCCI, pro se,          *
        Plaintiff,           *

vs.                          *

Marianne SMITH, MD,          *
U Mass Medical,              *
          Defendant.         *

==================

## VERIFIED CIVIL RIGHTS COMPLAINT

### PARTIES

1). Mr. John Mucci is a resident of Massachusetts and a citizen of the United. He is also a prisoner at the Souza-Baranowski Correctional Center (SBCC) in Shirley, MA. The address there is : Box 8000, Shirley, MA 01464.

2). Doctor Marianne Smith is also a resident of Massachusetts and a citizen of the United

— 1 —

States. She is being sued individually as well as officially for acts committed under color of state law. She works, and may be served, at: Box 8000, Shirley, MA 01464.

## JURISDICTION

3.) This Court has jurisdiction pursuant to 42 U.S.C. § 1983. The acts were committed by defendant Smith, a state employee, in the performance of here job.

## FACTS

4.) Paragraphs 1-3 are incorporated herein by reference.

5.) On October    , 2004, the plaintiff, while housed on the Special Management Unit (SMU) of SBCC, was accused of misusing his medication.

6.) On October 25, 2004, defendant Smith put a stop order on plaintiff's meds.

7.) Plaintiff maintained that there was no truth to the charges and defended himself against

— 2 —

the charges.

8.) On November 2, 2004, a disciplinary board heard the matter and dismissed the charges relative to misuse of medication.

9.) Defendant Smith found me guilty before I was afforded due process, and she imposed her own punishment.

10.) In SMU at SBCC, medication is either crushed and handed through the "food slot" or else a prisoner is handcuffed, his door is opened, and his ingestion of the uncrushed pills is monitored.

11.) The defendant had alternative, reasonable means of administering the meds without stopping them all together.

## CLAIMS FOR RELIEF

A. In depriving him of his duly prescribed medication prior to a finding of guilt relative to charges of misusing his medication, defendant Smith imposed upon defendant a sanction without due process of law in

— 3 —

violation of the 14th Amendment to the United States Constitution.

<u>REQUEST FOR RELIEF</u>

The demands of due process are simple. To deprive Mr. Mucci of a medication to which he is legally entitled based on an unsubstantiated allegation (a charge eventually thrown out as unsupported by facts) that he had somehow "misused" it is illegal. There must be some process. Given the alternative measures available to allay any security concern, defendant Smith's decision violated plaintiff's rights.
         Therefore, plaintiff asks that:

A.) the court grant compensatory damages for emotional suffering;
B.) punitive damages as a deterrent;
C.) a declaration of rights (M.G.L. c. 231 <u>et seq</u>)
D.) and any other such relief to secure the rights of the parties.

Respectfully submitted,
John Mucci
John Mucci Pro-Se
Box 8000                                        11/24/04
Shirley, MA 01464                —4—

<u>VERIFICATION</u>

I, John Mucci, hereby verify and swear that the facts as stated in the attached complaint are true and also accurate to the best of my knowledge, recollection and belief.

Sworn to under penalty of perjury.

X _John Mucci._
John Mucci

DATE: 11/24/04

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN MUCCI, pro se,<br>                     Plaintiff,<br><br><br>v.<br><br>MARIANNE SMITH, MD,<br>UMASS MEDICAL,<br>                     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     CIVIL ACTION NO.: 04-CV-12726-DPW |

## AFFIDAVIT OF DEFENDANT, MARIANNE SMITH, M.D.

I, Marianne Smith, M.D., on oath depose and swear that:

1.   I am a psychiatrist, licensed to practice in the Commonwealth of Massachusetts.  Specifically, I am a psychiatrist at the Souza-Baranowski Correctional Center ("SBCC"), employed by UMASS Correctional Health ("UMCH").

2.   UMCH is a contractual provider distributing medical care and treatment to inmates incarcerated at SBCC.

3.   I have been a psychiatrist at SBCC since July 1, 1999, and I was the psychiatrist treating plaintiff during the time frame discussed in his Complaint.  My duties as a psychiatrist at SBCC focus on providing inmates with psychiatric care, such as regular assessments, diagnostic formulation, treatment plans, monitoring and consultation.

4.   I am familiar with the plaintiff's allegations in this matter, and I have personal knowledge of the medical care and treatment Mr. Mucci received while remanded to the custody of SBCC.

5.   Attached hereto are true and accurate copies of pertinent portions of the plaintiff's medical records.  (See Exhibits 3, 4, 5, and 6).

6.   Contrary to plaintiff's allegations, I did not deprive Mr. Mucci of his due process rights, and I prescribed him adequate and proper medication for

his Adult Attention Deficit Hyperactivity Disorder ("ADHD"), continuously following the appropriate protocol on prescription of controlled substances.

7.   Review of plaintiff's medical records indicates that my treatment of Mr. Mucci's ADHD was appropriate and adequate.

8.   Specifically, prior to October 24, 2004, plaintiff was routinely given Ritalin to treat his ADHD.  (See Exhibit 4 attached, medical records).

9.   On October 25, 2004, I reviewed LPN Kavanagh's progress notes from the previous day and learned that Mr. Mucci had been caught misusing and diverting his Ritalin medication.  I also learned that white powder, a white straw tube, and razor blades were found in the cell.  (See Exhibit 3 attached, Jasen Kavanagh's progress notes).

10.  Mr. Kavanagh's report stated that Mr. Mucci admitted to diverting his medication, saying "I cheek my medication, you just can't catch me, but that does not give you the right to float my medication in water.  And when I do something stupid and hurt myself or rip out, I am not going to be responsible it is going to be your fault."  (Exhibit 3).

11.  I also reviewed Sergeant James Hart's October 24, 2004 incident report stating that, in addition to the paraphernalia found in Mr. Mucci's cell, plaintiff refused a mouth check and was verbally abusive toward Mr. Kavanagh and the guards.  (See Exhibit 8 attached, Sergeant Hart's incident report).

12.  On October 25, 2004, I tried to inform plaintiff of future changes in his Ritalin medication, however, as I approached his cell, plaintiff became verbally abusive, at which point I immediately left.  (See Exhibit 8 attached, disciplinary report).

13.  The Massachusetts Board of Registration in Medicine and the Drug Enforcement Agency's policies, governing the prescription of controlled Substances, states that "prescribing controlled substances requires special caution because of their potential for abuse and dependence.  Good judgment should be exercised so that diversion to illicit uses is avoided and dependence is minimized."  (See Exhibit 7 attached, Massachusetts Board of Registration in Medicine protocol).

14.  Based on these guidelines, the UMCH staff observations, and my own clinical judgment, I found it necessary to reassess plaintiff's need for Ritalin and placed a stop order on the medication.

15.  While we did not substitute another drug for the Ritalin, Mr. Mucci

961156v1

remained on the drug Seroquel, a mood stabilizer. Since the stop order has been in place, plaintiff still complains that he is unable to concentrate, but he appears more calm and less distracted and hyperactive. (Exhibit 6).

16.    On November 16, 2004, I met with plaintiff and offered to replace his Ritalin medication with another ADHD drug. Plaintiff refused this offer. During the meeting Mr. Mucci told me that he was upset because his medication was unjustly stopped even after the MDOC disciplinary board dismissed the allegations of misuse.

17.    In response, I told Mr. Mucci that the decision to stop his Ritalin medication was based on clinical data, including UMCH staff observations and communications with MDOC staff. I explained that the state set forth guidelines on stopping medication to prevent misuse and diversion for illicit purposes. I also told plaintiff that my decision to stop his Ritalin was independent of the results of his disciplinary hearing, and instead based on my clinical judgment. (See Exhibit 6 attached, my progress notes).

18.    Throughout my time working with Mr. Mucci, I have never sanctioned him without due process, nor was I deliberately indifferent to his medical needs. Rather, I followed UMCH protocol regarding ADHD treatment, and provided plaintiff with adequate medication.

19.    The above statements are true and accurate and based on my personal knowledge.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY**

THIS _second_ DAY OF _May_, 2005.

_Marianne Smith_, M.
Marianne Smith, M.D.

# EXHIBIT 3

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: Mucci John    ID # A89402    D.O.B. 1-10-71

| DATE | TIME | NOTES |
|------|------|-------|
| 10-24-04 | 0800 | During medication Administration Rounds, I was told by DOC Staff that inmates where still finding ways to divert crushed medication. They also stated that they were told by MH Clinition Jody, that Mucci was sticking medication Cups to the back of his door. When I arrived at Inmate Muccis Cell, he asked for just his Ritalin. I crushed his Ritalin and put it into a small plastic medication Cup c̄ water. He became instantly Angry - Refused his medication And Threw his Orange Juice on the Teer. I explained to him it was not personal and I was not accusing him of diverting medication. I did it because medication diversion has become an increasing problem in the SMU. He stated "I Cheek my medication, you just Cant catch me." "but that does not give you the right to Float my medication in water." "And when I do something Stupid and hurt myself For Rip out I am not going to be responsible it is going to be your fault." At appox 9AM I went back to his Cell to offer to pull him out of his cell so he could take all of his prescribed medication. He would not Listen to anything I was trying to say —> |

Page 1 of 3    Jason Kavanaughipa

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

*SBCC*
Institution

NAME: *Mucci John*     ID # *A89402*    D.O.B. *1-10-71*

| DATE | TIME | NOTES |
|------|------|-------|
| Continue From Previous Page → | | And his anger only seemed to increase - He stated "I am refusing to take any of my medication if I have to come out of my cell or it gets put in water." |
| | 1200 | At approx 1200 during medication rounds, Inmate Mucci requested just his Ritalin so I could crush it and he would not have to come out of his cell. I explained that due to him admitting that he diverts his medication he would have to be cuffed up and brought out of his cell, he agreed. When he received his medication, he pretended to pour the contents in his mouth, he then crushed the paper cup, turned around and threw the paper cup into the toilet. - The officers them made him flush the toilet. The officers then closed his door and opened his wicket so the cuffs could be removed. There was a medication cup clenched in his fist. Inmate Mucci threw an empty medication cup in the toilet that he already had in his hand, the medication cup full of Ritalin was still in his possesion. When the officers realized he still had the Ritalin clenched in his hand, they asked to see what he was → |

7-13W 1/95

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: _Mucci John_ ID # _A89402_ D.O.B. _1-10-71_

| DATE | TIME | NOTES |
|------|------|-------|
| Continue From Previouse Page → | | holding in his hand. He refused and threw the med cup under his bunk. The officers then removed him from his cell and searched ~~her~~ searched it. They found a hard covered book c̄ crushed up lines of a white medication a straw and two Razor blades. _Jason Kavanagh RN_ |
| | | |

7113W 1/95

# EXHIBIT 4

**UMASS CORRECTIONAL HEALTH TREATMENT ADMINISTRATION RECORD**

Institution: _Sacc_

MONTH: _Oct_    20__

| START DATE | STOP DATE | INT | DRUG - DOSE MODE - INTERVAL | HR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8-13 | 11-13 | | Mylanta 30cc PO QID PRN x90d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9-9 | 12-9 | | Prozac 40mg PO QAM x90d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9-9 | 12-9 | | Remeron 30mg PO QHS x90d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9-9 | 12-9 | | Wellbutrin SR 150mg PO BID x90d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9-11 | 10-11 | | Adderall 20mg PO QID Crush x30d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9-28 | 10-28 | | Ritalin 20mg PO QID Crush x30d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 10-13 | | | Tylenol 650mg PO x1 dose | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

NS=NO SHOW    DC=DISCONTINUE    R=REFUSED

ALLERGIES: ___

DOB/INMATE #: A89402    1-16-71

LOCATION: L3 #3-20    Tucci - John

NAME:

B027 Rev. 08/01

UMASS CORRECTIONAL HEALTH TREATMENT ADMINISTRATION RECORD

Institution _____

MONTH _____ 20 ____

| START DATE | STOP DATE | INT | DRUG - DOSE MODE - INTERVAL | HR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10-20 | 12-22 | By | Bactroban PRN 1 plg QD x 3day | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 10/25 | 10/25 | SAV | Ritalin 20mg po tid x 1 day *crush* | 7:20 16:00 22:00 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 10/26 | 10/26 | SAV | Ritalin 20mg po bid x 1 day *crush* | 8:00 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 10/27 | 10/27 | SAV | Ritalin 20mg po qd x 1 d *crush* | 2007 0:00 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |

NS=NO SHOW   DC=DISCONTINUE   R=REFUSED

ALLERGIES: Lithium

DOB/INMATE #: A89402  1-10-71

LOCATION: L3 #20

NAME: Murru John

8027 Rev. 08/01

# UMASS CORRECTIONAL HEALTH TREATMENT ADMINISTRATION RECORD

MONTH NOV  20 0?

Institution: Sec

| START DATE | STOP DATE | INT | DRUG - DOSE MODE - INTERVAL | HR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/13 | 11/13 | pg | Mylanta 30cc PO QID PRN x90d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9/9 | 12/9 | pg | Prozac 40mg PO QAM x90d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9/9 | 12/9 | pg | Remeron 30mg PO QHS x90 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9/9 | 12/9 | pg | Wellbutrin 150mg PO BID x90d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9/28 | 10/28 | pg | Ritalin 20mg PO QID x30d | 9A NOON 4P 8P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 10/5 | 11/5 | ag | Baitracin ? out x1 time | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 11/15 | | lf | Bacitracin x1 for wt on head | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

NS=NO SHOW    DC=DISCONTINUE    R=REFUSED

ALLERGIES: Lithium

DOB/INMATE #: A89402  1-16-71

LOCATION: G3 # 28 26

NAME: Mucci John

8027 Rev. 08/01

# UMASS CORRECTIONAL HEALTH

## PROBLEM LIST

MCI-Con.
_____
Institution

NAME: _Mucci, John_____    ID # A~~838444~~ 89402  D.O.B. _11/0/71_

MEDICATION ALLERGIES: ___(NKDA)n~~ LiCo3_____

| Date Identified | Significant Health Problems | Healthcare Practitioner Signature | Date Resolved | Healthcare Practitioner Signature |
|---|---|---|---|---|
| 4/11/04 | Q5(+) suicide attempt | Braun Corsuro | | |
| 8/5/04 | PTSD | Klein LICJW | | |
| " | ADHD | " | | |
| 11-16-04 | ETOH dependence | M Smith, MD | | |
| 11-16-04 | Poly substance abuse | M Smith, M.D. | | |
| 11-16-04 | Medication misuse while incarcerated | M Smith, M.D. | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

8024 Rev. 1/95

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
_____
Institution

NAME: Mucci, John          ID # A 89402    D.O.B. 1-10-71

| DATE | TIME | Psych — chart not available |
|------|------|------------------------------|
| 7-13-04 | 4:15 pm | Seen @ cell door in SMU per his request. Pt says the ritalin "wears off" and he has trouble concentrating a few hrs p̄ he receives a dose. Is asking for an ↑ in ritalin. He also mentioned wellbutrin and wanted to know if it would be helpful. He stated "a cousin takes wellbutrin and ritalin" and says "she's never been better." He also mentioned that a ♂ who molested him when he was a child was recently arrested for molesting other children. He is happy about this but at the same time is experiencing "a lot of bad memories." He says his parents are helping him file criminal charges against this individual. He showed writer a copy of Driven to Distraction, a well known book about ADHD, that his mother sent him. He stated "this book describes me." He said he was taking notes and trying to learn everything he could about ADHD. Of note, pt's name was mentioned in an incident report which stated another inmate was trying to pass 2 Klonopin tablets to him. MSE: well groomed & unshaven; polite + cooperative c̄ euthymic mood + affect. T.P. logical, s̄ FTD; s̄ psychosis s̄ SI/HI. Future oriented re getting out of SMU. A/ ADHD (by hx that is self-reported) — states he is still symptomatic |

7113W 1/95

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
_____
Institution

NAME: Mucci, John          ID # A 89402    D.O.B. 1-10-71

| DATE | TIME | NOTES |
|------|------|-------|
| | | Psych — chart not available — note continued. |
| 7-13-04 | | Maj Depression — in remission |
| | P1 | Discussed ↓ing ritalin to SR preparation which he agreed to do. Also discussed trial of Wellbutrin which he also agreed to (this is preferable to ↑ing ritalin dose in someone who has abused substances in and out of prison). F/u in 1-3 mo + sooner prn — M Smith MD |

7113W 1/95

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
**Institution**

NAME: Mucci, John        ID# A89402   D.O.B. 1-10-71

| DATE | TIME | NOTES |
|------|------|-------|
| | | Psych - Admin |
| 7-21-04 noon | | Pt requested to have ritalin SR at 4pm instead of 8pm — Order did — Mr Smith, MD |
| | | Psych - Admin |
| 7-28-04 2 pm. seen in VR in SMU. | | Seen 7-27-04, Chart not available until today. Pt was angry @ writer for not seeing him sooner. Was angry that his demand for ↑ ritalin was not immediately addressed & angry that writer had not spoken to his mother. Pt's ma has made numerous calls to SBCC administration & has been referred to DOC Health Services per policy. Pt was informed of this. He stated he was having "a hard time" & is feeling "very agitated and uptight." Is nervous about possibly having to testify in court related to his sexual victimization as a child. Is having ↑ difficulty sleeping, bad dreams when he does sleep, & anxiety during the day. He is passing the time reading books. He says he is finishing 400 pages/day & that his mother is having a hard time sending him books fast enough. He claims the ritalin wears off between doses & feels he needs "3 doses." Writer suggested that the dosing sched be split up to Q10, but that he continue on the same total dose per day. |

——→

# UMASS Correctional Health
## PROGRESS NOTES

SBCC
Institution

**NAME:** Mucci, John        **ID#:** W83736        **D.O.B:** 1/10/71

**DATE:** July 26, 2004        **TIME:** 9:35 AM

**D:** Met with inmate at cell door in L3 unit per routine mental health rounds/request. Inmate stated that his mother had called for the mental health services three times because of his need for medication. According to inmate, he is currently taking Ritalin (AM, PM), Wellbutrin (AM), and Prozac (PM). He stated that his mother (who is a surgeon) wants him to have an increased dose of Ritalin and has not received a call back from mental health services. This writer observed that the primary practice within the institution limited family contacts: (1) without consent –inmate not being a minor, (2) staff could not identity callers. Inmate made a sound when this writer noted that stating "what do I have to do?" Then proceeded to list several people with whom he would file complaints. Inmate stated that he "did not know why you (this writer) asks if everything is all right, if you can't do anything". Informed inmate that this writer was not a prescriber but would inform MD of his request. Inmate noted that he wanted her to come and speak with him regarding the medication. Noted to inmate the 90-day treatment schedule for prescriber's and that if he was experiencing a problem he could notify her in advance. Inmate reported that he had. Encouraged inmate to continue his supportive relationship with his family.

**A:** Several times during the conversation, inmate was asked to speak appropriately with this writer. Agitated, Alert, and oriented. Irritable mood with congruent affect. Process of thought direct. Content focused on obtaining medication. No observed signs of psychosis. Observed no indication of inmate's intent to harm self or others. Appeared stable at present.

**P:** F/U per segregation protocols, treatment plan, and prn. Notify MD of request

Caroline G. Gray, LCSW

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: Mucci, John          ID# A89402    D.O.B. 1-10-71

| DATE | TIME | NOTES |
|------|------|-------|
| | | Bycha – Admin |
| 7-28-04 | 2:15pm | Writer also discussed low dose remeron @ hs for sleep which he also agreed to try. R+B reviewed. Pt is also upset re possibility of x-fer + NCC I. MSE: Initially angry at demanding and intimating that his lawyer would be contacting writer. He later calmed down and expressed self appropriately in a non-demanding and non-threatening manner. Overall mood + affect mildly anxious and angry, T, P, logical, s̄ paranoia; s̄ delusions; s̄ AH/VH; s̄ SI/HI. Forward thinking re contact c̄ lawyer, family and about getting moved out of SBCC segregation. |
| | A/ | ADHD – well controlled |
| | | Situational anxiety and sleep disturbance |
| | P/ | start remeron 15mg qhs |
| | | Δ dosing sched of ritalin SR to QID. |
| | | M Smith, MD |
| | | Psych |
| 8-10-04 | 4:30pm | Seen on unsched visit. Pt asked to see writer while writer was on the SMU tier seeing other inmates. He reported the QID dosing of ritalin was "much better than twice a day." Says remeron is somewhat helpful but he is still having trouble sleeping. He asked for ↑ dose. "Otherwise I'm great doc." Mood + affect euthymic. |
| | A/ | Residual insomnia |
| | P/ | will ↑ remeron to 30mg – F/u in 2-3 mo + prn — M Smith, MD |

7113W 1/95

# UMASS CORRECTIONAL HEALTH

## PHYSICIAN'S ORDER

### PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Mucci John_    ID NUMBER _A 89402_  D.O.B. _1-10-7(_

INSTITUTION _SBCC_    ALLERGIES _Lithia_

DATE _8-13-04_    TIME _1:30pm_

<u>ORDERS</u>

M.H. ~~RTN~~ D/C ritalin SR when regular
ritalin is available,
- Ritalin 20mg PO QID x 30d (crush)
- Mylanta 30cc PO Q.I.D prn GI S.E.
from crushed ritalin x 90d -

M M Smith, M.D,

NOTED

Sue Garrepy nn
8-13-04  /30

SIGNATURE _____

Interchange is mandatory unless the prescriber writes the words
"no substitution" in this space:

PRINT NAME _M M Smith MD_

06 Rev. 4/01                    Original (White): Retain in

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
_____
Institution

NAME: Mucci, John          ID # A89402     D.O.B. 1-10-71

| DATE | TIME | Psychiatry NOTES |
|------|------|------------------|
| 8-13-04 | 1:30 p.m. | Pt seen briefly @ cell door in SMU to inform him that all SR ritalin will be changed to regular ritalin and all regular ritalin will be crushed 2° to the high abuse potential of the drug in this institution. Pt understood and accepted the change. He stated he was sleeping "great" c̄ the change in regimen. Denies SE, concentration + atten reported to be "great." |
|  | A/P | Stable — continue current meds x̄ Δ to regular ritalin. F/U in 2-3 mo + sooner prn — M.G. Smith M.D. |
|  |  | Psych — Admin |
| 8-20-04 | 3:30 pm | Pt requested to take prozac in a.m. order changed. — M.G. Smith M.D. |

7113W 1/05

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
_____
Institution

NAME: John Mucci          ID # W83726     D.O.B. 1/10/71

| DATE | TIME | NOTES |
|------|------|-------|
| 8/25/04 | 2pm | (1) I/m seen for 10th 1:1 contact and per sick slip request. I/m reports he would like to replace his Ritalin w/ Adderall, "B/c the ritalin wears off." I/m then discussed recent struggles w/ PTSD sx's re: Molestation when he was 10 y.o. Described nightmares containing images of his trauma, as well as frequent flashbacks "when he's trying to concentrate on something." Reports he wants to begin processing his trauma w/ this writer, "I need your help — I'm asking for help — I'm reaching out." Also reported not having any contact w/ his [?].O. (2) as a significant stressor. I/m does report that "he has a clear head now that he's sober." (3) I/m calm & cooperative — Articulate —. logical / organized Ø psis. Euthymic mood congruent w/ affect. ⊕ appetite ⊕ Sleep Ø Concentration. Denies SI/HI. Neat & clean. A & O x3. (4) F/u per tx plan protocol. ————— [signature] LICSW C. Albrecht; LICSW ————— |

7113B 1/95                          MENTAL HEALTH

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

_____
SBCC
Institution

NAME: Mucci John          ID # W83724    D.O.B. 1·10·71

| DATE | TIME | NOTES |
|------|------|-------|
| 9/4/04 | 1040 AM | medic I |
|  | 28 | Ⓢ I/m seen at celldoor in response to a sick slip. I/m was lying on bed reading, and |
| Demerchant |  | stated that he didn't need to see MH nor had he put in a sick slip. When prompted to sick slip |
|  |  | (med issue), I/m stated, "oh yeah. that. I want my meds changed." writer asked I/m if |
|  |  | they were changed recently, and I/m stated |
|  |  | "well they changed them. But I want my meds changed to the way I want them, not how they |
|  |  | want them. I'm the one who has to take them." |
|  |  | Ⓐ Not willing to engage, therefore difficult to assess. Appears A+O×4. Does not appear |
|  |  | to be at current risk of harm to self/others. |
|  |  | Ⓟ I/m will continue to be seen per leg rounds prn, and per tx plan. Cristy Demerchant, MSW |
|  |  | CH Howell, LICSW |

7113B 1/95                    MENTAL HEALTH

# UMASS CORRECTIONAL HEALTH

## PHYSICIAN'S ORDER

---

### PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Mucci, John_     ID NUMBER _A89402_     D.O.B. _1-10-71_

INSTITUTION _____ SBCC _____     ALLERGIES _____ Lithium _____

DATE _____ 9-9-04 _____ TIME _____ 1800 _____

---

**ORDERS**

M.H. Adderal 20mg PO QID, CRUSH
DC ritalin when adderal is
available — M Smith, M.D.
NOTED                              X 30
Susan garupy rn  9-09-04   1800

---

SIGNATURE _____

PRINT NAME _M Smith, M.D._

Interchange is mandatory unless the prescriber writes the words
"no substitution" in this space:

8006 Rev. 4/01                    Original (White): Retain in Inmate Medical Record

# DEPARTMENT OF CORRECTION
## PHARMACEUTICAL SERVICES DEPARTMENT
### NON FORMULARY REQUEST FORM

Prescribing Clinician: _Marianne Smith, MD_

Date Sent: _9-9-04_                    Date Returned: _____

Patient Name: _John Mucci_            Unit: _____

Non Formulary Medication: _Adderal_      Dosage: _____  Cost: _____

Similar Formulary Alternatives:  _ritalin_        Cost: _____

_____        _____
_____        _____
_____        _____

---

**To be completed by the prescribing clinician**

Reason for ordering Non Formulary Medication

_Pt is no longer responding to ritalin, says_
_he was on adderal in past and it worked_
_better._

Approximate Duration of Therapy: _indefinite_

Prescribing Clinician's Signature: _M Smith, MD_

**\*INADEQUATELY DOCUMENTED REQUESTS WILL BE RETURNED FOR FURTHER DOCUMENTATION**

**\*\* Non Formulary** medications are NOT stocked in the pharmacy. A delay in procurement of these medications as well as the potential for increased patient costs over equivalent formulary medications must be considered.

Evaluation of the non formulary request by the Pharmaceutical Services Department

_____
_____

Pharmacists Signature: _____

Evaluation of the non formulary request by the Director of Medicine, the Director of Psychiatry or their designee.

_____
_____

Drug Ordered:     Yes _____     No _____     Date: _____
Drug Dispensed:   Yes _____     No _____     Date: _____

Signature: _____

MedManagement

# CORRECTIONAL MEDICAL SERVICES / UMASS

## PROGRESS NOTES

SBCC
_Institution_

NAME: Macci, John                ID # A 89402    D.O.B. 1-10-71

| DATE | TIME | Psychiatry                                    NOTES |
|------|------|------|
| 9-9-04 | 8:15pm | Seen at cell door in SMU 2° to pts request via S/c slip. Pt stating ritalin (regular) is "wearing off" too soon at ∴ he's having trouble concentrating and reading. Acknowledge he's having some trouble sleeping & is feeling anxious re legal issues. MSE: Polite + cooperative; c̄ euthymic mood + affect. ∅ psychosis. ∅ SI/HI. Forward thinking re getting bailed out of SMU. |
| | A/ | ADD - subjectively symptomatic on ritalin, c̄ breakthrough sx |
| | P/ | Will Δ to adderall to see if he can have better sx control F/u in 2-3 mo + sooner prn ~ |
| | | ___ M. Smith, M.D. |
| 9/16/04 | 7:45 2pm | Psych Adm Notes     Pt put in slip requesting return to Ritalin 2° SE from Adderall "intolerable" + nursing repass nothing has helped them. Pt also requests to stop Prozac. Record reveals pt states (+) past hx c̄ Adderall + ↓ effectiveness of Ritalin. Will order Tylenol # x 30 days (TID/PRN) to try to get him past what me adjustment issue c̄ med. NRsg reports he dislikes coming out to get Prozac (cuffing) NRsg will discuss c̄ pt the idea of capsule being open + continue on med. Will have Dr Smith F/u on Return     Jane Steigen RN, LCR |

# UMASS CORRECTIONAL HEALTH

### PROGRESS NOTES

SBG
Institution

NAME: John Mucci    ID # A89402    D.O.B. 1-10-71

| DATE | TIME | NOTES |
|---|---|---|
| 9/17/04 | 9 AM | Psych Adm Note |
| | JH | Med's changed Prozac/Wellbutrin to crushable forms as pt in Refusing med Rather than being cuffed to come & get them. NRsg spoke c pt who agreed to comply c meds if he does not need come out of his cell. Jesse S Feguen RN Psych |
| 9-28-04 5pm | | Seen at cell door in SMU. Pt requested to be seen. Reports adderal gives him "too many side effects" and doesn't help his concentration as much as ritalin, ∴ requests to restart ritalin + D/c adderal. He was polite + calm, ₃ PMA. Euthymic mood & affect. Ⓞ SI/HI. Future oriented re getting out of SMU. |
| | A/ | ADHD — subjectively not as responsive to adderal as he was to ritalin — |
| | P/ | Restart ritalin at previous dose ; d/c adderal when ritalin available — F/u in 2-3 mo + sooner prn — M Smith, MD |

7113W 1/95

## UMASS CORRECTIONAL HEALTH

## PHYSICIAN'S ORDER

### PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Mucci, John_    ID NUMBER _A89402_  D.O.B. _1-10-71_

INSTITUTION _SBCC_    ALLERGIES _LiCO3 mg_

DATE _9-28-04_  TIME _1pm_

**ORDERS**

M.H. Ritalin 20mg PO QID x30d CRUSH

D/c added when ritalin is available.

M Smith, MD

Noted 9/28/04 24/7 _Jah Oaks_ 4pm

SIGNATURE _____

PRINT NAME _M Smith, MD_

Interchange is mandatory unless the prescriber writes the words "no substitution" in this space:

8006 Rev. 4/01

## UMASS CORRECTIONAL HEALTH

### PHYSICIAN'S ORDER

PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Mucci, John_    ID NUMBER _A89402_    D.O.B. _1-10-71_

INSTITUTION _SBCC_    ALLERGIES _LiCO3 mg_

DATE _10-25-04_ TIME _11am,_

ORDERS

M.H. D/C ritalin ms
Ritalin 20mg PO TID X 1d,
then Ritalin 20mg PO BID X 1d,
then Ritalin 20mg PO qd X 1d,
then d/c ritalin. CRUSH -

M Smith, MD

Noted Susan Aquion-Vargas RN
10/25/04
1725

SIGNATURE _____

Interchange is mandatory unless the prescriber writes the words "no substitution" in this space:

PRINT NAME _Marianne Smith, M.D_

8006 Rev. 4/01

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

_____ S O C c _____
Institution

NAME: _John Mucci_    ID # _W83726_    D.O.B. _1/10/71_

| DATE | TIME | NOTES |
|------|------|-------|
| 11/0/01 | 3³⁰pm | (S) I/m seen for routine MH contact and per |
| SMU | Tanaka Co | request. I/m reports feeling angry and threatened by C.O. whom he claims is harassing him. Reports he has been trying to contact MH (medic II) since 8³⁰am. I/m reports "if this C.O. doesn't stop pushing me, I'm going to head butt or spit on him." Also reported passive SI - "if it doesn't stop." Contracts for safety. Reports he wants to get back on his medications that were cut recently so accusation of misuse. Reports diminished concentration, increased irritability & agitation & inability to sleep. |
| | | (A) Passive SI - Contracts for safety. Irritable - enraged presentation congruent w/ mood. Pressured - yelling + threatening. c/o ↓ concentration. Denies AH/VH - logical/ organized. neat & clean. |
| | | (P) F/u per tx plan protocol. _____ John Solad asw/ntr |
| | | Addendum: Incident report filed # and submitted to Mental Health Director. _____ John Solad asw/ntr |
| | | (HHolowich, LICSW) _____ |

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: John Mucci          ID # W83726          D.O.B. 1/10/71

| DATE | TIME | NOTES |
|------|------|-------|
| 11/24/04 SMU | 9:30ᴬ John B dot | (S) I/m seen for routine contact and to assess his views on being classified to J-1. I/m reports that if he is classified to J-1, he will "do something to get back to the SMU." I/m would not specify what he would do. He reports that he no longer has enemies here and sees no reason why he couldn't go to population (general population). I/m then reported having difficulty concentrating since his Ritalin was d/c'd, but reports "I don't care whatever." In response to his views on the J-1 class, I/m was calm and reflective — and did present interest in being classified from SMU. I/m then reported "everything else is fine — I've got no issues except for the Ritalin." (O) I/m Denied any SI/HI. When asked if he would try to hurt someone on J-1, he said, "I don't know what I could do." Calm, cooperative — euthymic/engaging affect - neatly shaven. Speech somewhat pressured. Denied AVOT hallucinations. (P) F/u per tx plan protocol; continue w/ termination services. John B ____ intern ____ C. Holovecchi, LICSW |
|      |      | Addendum — Will inform MHD of the above (A) |

# EXHIBIT 5

**UMASS CORRECTIONAL HEALTH**
**SICK CALL REQUEST FORM**

Print Name: _John Mucci_ ID#: _83736_

Date/Time _7-20-04_ Housing Location: _L-3  #32_

Check **ONLY** One Box:  ☐ Medical   ☐ Dental   ☑ Mental Health

Nature of problem or request: who do i talk to or write to get Results on getting my meds At 4:00 pm (Dr Rauch or Dr Smith) I get wellbutrin/ritalin at 8:00 then 8:00pm I get prozac/ritalin. SR Ritalin Does NOT Last me ⟶

I consent to be treated by the healthcare staff for the condition described above.

Inmate Signature _____

PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
DO NOT WRITE BELOW THIS AREA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| Date/Time Recieved | |
| --- | --- |
| 7/20/04 /2p | |

_SBCC_
Institution

REFERED TO:
☑ Nurse   ☐ Midlevel   ☐ Physician

_M, Cox RN_
Slip Sorted by:

☑ Mental Health   ☐ Dental   ☐ Other _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Subjective:

Objective: T _____ P _____ R _____ B/P _____

Assessment: Inmate requesting to get Ritalin SR @ 4pm in addition to morning + hs dosages. Inmate feels Rit. SR doesn't last the twelve hrs.

Plan [include inmate education]:
meds ⟶ D. Smith

Signature & Title: _Maureen Cox RN_ Date: /200p Time: 7/20/04

8022 Rev. 4/01

Prozac 40mg @ 8pm
Wellbutrin SR 150mg @ 8am
Ritalin SR 40mg @ 8am & 8pm
Ritalin 400mm

From 8:00 AM too 8:00 pm I would like Ritalin also at 4:00, I can concentrate much better with Ritalin. I am also going to have my mother call today to make sure someone knows about this. Dr Smith I have written to and filled out sick slips, I seen her on 7-19-04 and she walks away knowing I'm having trouble concentraiting.

Thank You

John Mucci

Now i go 16 Hours with out Ritalin, I want Ritalin at 800 AM, 400 pm  800 pm. I am the one with ADD & PTSD, not mental Health. My parents and Attorney are going to Call Today and Talk to who EVER it takes. ? DR Rauch, & who Ever is in Charge.

EDWARD M. Hallowell ⟶ (M.D.) and John J. Ratey (M.D.)

Wrote a Book Call (Driven to Distraction)

It teaches a person with ADD, PTSD Many Things, ONE is a person should Not Go LONG periods of time without Ritalin.

CGG
7/27/04
loosed

# UMASS CORRECTIONAL HEALTH
## SICK CALL REQUEST FORM

Print Name: John Mucci                                    ID#: 83736

Date/Time: 7-22-04                    Housing Location: L-3 #32

Check **ONLY** One Box:        ☐ Medical    ☐ Dental    ☐ Mental Health    Dr Smith

Nature of problem or request: The purpose of my mother
Calling was I DO NOT go Long periods of Time Without Ritalin.
Now i get Ritalin at 8:00 AP — 400pm that is 16 Hours without —

I consent to be treated by the healthcare staff for the condition described above.

Inmate Signature _____ John _____

## PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
## DO NOT WRITE BELOW THIS AREA

*********************************************************************

| Date/Time Recieved | | REFERED TO: |
|---|---|---|
| 7-22-04. 0900 | SBCC | ☐ Nurse    ☐ Midlevel    ☐ Physician |
| | Institution | |
| | Renlakend | ☑ Mental Health    ☐ Dental    ☐ Other |
| | Slip Sorted by: | |

*********************************************************************

Subjective:

Objective: T _____ P _____ R _____ B/P _____

Ref. to pap    7/26/04
CGG

Assessment:

Plan [include inmate education]:

Signature & Title: _____ Date: _____ Time: _____

8022 Rev. 4/01

letter sent
Was not a grievance

Doug Smith, I got your letter on 9/3/04, I would Like to know what Being in Segregation Environment has anything what So EVER to Do with SR Ritalin. Also DR.Smith should NOT put False words in my mouth, saying that i RECENTly Requested that i NOT have SR Ritalin. Also you said in your letter that it is protective of my FUTURE of my Treatment, Because other Inmates Abuse Ritalin, I could only Hope that you people have Enough Common sence, To Realize I'm not Responsible For other Inmates Stupidity, and outrages Actions.

I Strongly Feel that you and your Staff & Administration SHOULD Read the Book "Driven to Distraction" written By Two VERY, VERY "Smart, & well know" MD's, Doctors. Edward M. Hallowell, M.D & John J. Ratey M.D. This will Help All people who Do NoT have the Correct & accurate knowledge of Ritalin, I am paying the price for others actions, Thank God that you people Can NOT MAKE ME Do prison Time for there actions & CRIME.

Here is ONE of Many, MANY, Examples of How people in your Feild Have The Wrong Impression. I Do Relize that you Do HAVE a Boss, other Administrative people that I'm Sure Have more of A say than you Do, This is not Anything Toward You.

Thank You

John Mucci

RECEIVED
SEP 7 2004

Looking up from behind the counter, the pharmacist's eyes seem to say, "You want Ritalin? What are you, some kind of drug dealer?" This is **#1**

because of the association between Ritalin and "speed" in some people's minds. Until it is widely known that Ritalin is a safe, effective, and non-habit-forming treatment for ADD in adults, this unfortunate situation will probably continue to exist. **#Z**



logged (6)
9/20/04

## UMASS CORRECTIONAL HEALTH
### SICK CALL REQUEST FORM

W#

Print Name: _John Mucci_                    ID#: _83736_

Date/Time _9/20/04_              Housing Location: _L-3_

Check **ONLY** One Box:        ☐ Medical    ☐ Dental    ☑ Mental Health

Nature of problem or request: _At my Request, i was put on Atterall, insteAd_
_of Ritalin, witch is what I've Been TakinG, The Atterall gives me_
_HeADaches, I geT Dizzy, i Feel Like I'm on DRugs I want to goBack_
I consent to be treated by the healthcare staff for the condition described above. _To RitaLiN_

Inmate Signature _John Mucci_

### PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
### DO NOT WRITE BELOW THIS AREA

*********************************************************************

| Date/Time Recieved | | REFERED TO: | | |
|---|---|---|---|---|
| 9/20/04  0945 | _SBCC_ Institution | ☐ Nurse | ☐ Midlevel | ☐ Physician |
| | _Due_ Slip Sorted by: | ☒ Mental Health | ☐ Dental | ☐ Other ___ |

*********************************************************************

Subjective:

Objective:  T _____  P _____  R _____  B/P _____

Assessment:

Plan [include inmate education]:

ref te DAP 9/20/04
CGG

Signature & Title: _____    Date: _____  Time: _____

8022 Rev. 4/01

loss'd at 9/23/04 

## UMASS CORRECTIONAL HEALTH
### SICK CALL REQUEST FORM

Print Name: _John Mucci_    ID#: _W 83736_

Date/Time _9/21/04_    Housing Location: _L-3_

Check **ONLY** One Box:    ☐ Medical    ☐ Dental    ☑ Mental Health

Nature of problem or request: _I Need to go BACK to taking RitaLin,_
_I'm taking Atteral, I geT Dizzy, HeaDAches,_
_I feel High from it I DO NOT Like it. I'm the one who_

I consent to be treated by the healthcare staff for the condition described above. _Requested Atteral._

Inmate Signature _John M_

### PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
### DO NOT WRITE BELOW THIS AREA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| Date/Time Recieved | | REFERED TO: |
| --- | --- | --- |
| | Institution _____ | ☐ Nurse    ☐ Midlevel    ☐ Physician |
| | _____ | ☐ Mental Health    ☐ Dental    ☐ Other ___ |
| | Slip Sorted by: | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Subjective:

Objective:  T _____  P _____  R _____  B/P _____

Assessment:

Plan [include inmate education]:

Seen by JB 9/24

Signature & Title: _____    Date: _____  Time: _____

8022 Rev. 4/01

Dr Smith, Could you put me BACK ON Ritalin, The Atterol gets me DIZZY, HEADAches, and I feel High from it.

Thank You

John Mucci

W# 83736

L-3

See progress notes

Could you put me Back to Ritalin, Atterol
Gets me Dizzy, Headache's, Loss of Sleep,

Thank You

John Mucci

Seen  9-28-04    See progress notes

DR M. Smith, I Feel Your Being a Bit Bias, Because JUSTIN PECK & JOE Vyce were Found Guilty of misuse of Athorized medication, I was DISMISSED of the Allegations on the DISCIPLINARY Report, You were upset Because when you Tried to STOP my MEDS IN Aug - SepT 2004, My Mother Called many Times To see what was going on, out of Concern, as you ARE Aware I'm going threw a VERY DIFFICULT SITUATION of what was Done To me as a ChILD, You HAVE Seen Some of the paperwork yourself, My Attorney is AWARE of The Two Inmates you DID Nothing ABout Miss using Medication, Also i have a D-Report for SWEARING AT You, So Now your using this AgainST Me Also, I was on RitaLin well Before i got to SDCC, Theres A VERY Good Book — DRIVEN TO DISTRACTION — written By Two VERY well known Doctors, You should ReAD i't, Being A DR yourself, It explains How people With ADD, Do NoT get the So - Called High off of RitaLin Because i't Does the opposite to people Like Myself, The people who Care ABout ME Are and HAVE Been in the process of Reporting how you Found Me Guilty Before my HEARing, AND then AT the HEARing it was DiSMiSSED. SOUNDS A Bit BIAS ?

My Attorney Also SAY's                    Thank You
Inmates Are Testing Positive For morphine
IN SMU, AND NO ONE IS ON            John Mucci
morphine ? whats going on ?

Dr Smith, My Disciplinary Report says that medical STAFF made the identification that a Klonorpin pill was found, the so-called pill was Tested and Its not Klonorpin, So Now I'm Told It was Another Type of pill, wich Nobody Knows what it is, Today 11/3/04 the Klonorpin Disciplinary Report was Dismissed, I'm Sure this Dosnt make you happy. I Feel you do Not Like me Because your Attitude To me After my mother Called you was BAD, Toward me, And i Filed a grievance against you in Aug/Sept 04 when you Tried to get me off the SR-Ritlin. a private investigation says ~~he~~ A JUSTIN PECK was Caught Red handed, And you Diont take him off, Joe Vyce was Caught 2-3 Times you Never Shut him off, I was Shut off Before my Right to A Fair Hearing was given, with was Dismissed. is this personal? Do you Recall me Asking you To Take me off Adderall Because it was To Strong? My Parents & Attorney have A Copy of my Dismissed D-Report, And Are Contacting the Chain of Commands.

Thank you

FoR the LaST three weeks i have Been
UNaBle to Sleep a Full NighT, I WAKe
Up 4-5 Times per Night, I NeeD
to iNCReASe the RemRoN or TAKe Something
EISE, I WONDeR NoW iF i will get
ANy MenTal HeAlth Care Because of DiSmiT
Bias Behavior, this is the 3RD Time
i WRoTe and Filled out Sick SLip, AM
i Being DeNiDe MenTal HeAlTh CARE?

John Mucci
W/a  83736

# EXHIBIT 6

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: Mucci, John     ID# A89402   D.O.B. 1-10-71

| DATE | TIME | Psych                                    NOTES |
|------|------|------------------------------------------------|
| 10-25-04 | 11:15am | Writer was informed that pt was caught c̄ drug apparatus in his cell ad c̄ crushed Klonopin in his cell al another white powdery substance in a straw in his cell. He also told a med nurse that he cheeks his meds but "just hasn't been caught." He was informed by writer that his ritalin would be dr'cd 2° to abuse of prescribed medication al having a controlled substance that was not prescribed — Pt told writer "talk to my lawyer; see you cunt." _____ NP |

# UMASS CORRECTIONAL HEALTH

### PROGRESS NOTES

SBCC
_____
Institution

NAME: Mucci, John          ID # A 8 9402     D.O.B. 1-10-71

| DATE | TIME | Psych NOTES |
|------|------|-------------|
| 11-16-04 | 4:30pm | Pt seen in VR in SMU per his request via sick call slip. He feels writer "unjustly" stopped his ritalin and that writer ~~unjustly~~ "judged" him before his D-board hearing occurred. Because some of his charges were dismissed he feels he should be prescribed ritalin again. Writer informed him that clinical decisions are not made based on results of D-board hearings, but rather from the clinical data available to writer which includes (but is not limited to) writer's observations and writer's communications with nursing staff, corrections staff, and mental health staff. He reported he is "not doing well" and can't concentrate and is having trouble sleeping. He feels the remeron is "no longer working" but does not want it increased. Writer discussed ↑ing the wellbutrin, but he stated "fuck that." Writer also discussed using desipramine as an adjunct tx for ADD. He stated he only wanted something to help him sleep, and Writer discussed R+Ts of low dose elavil which he agreed to try at hs for sleep. MSE: Adequate grooming/hygiene. Initially apologetic for his behavior during our last meeting but he quickly became angry, insulting, demanding and |

*(correction above "unjustly": "Ervg ms")*

page 1 of 3

$\longrightarrow$

7/13W 1/95

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

Institution SBCC

NAME: Mucci, John    ID # A 89402    D.O.B. 1-10-71

| DATE | TIME | NOTES |
|------|------|-------|
| 11-16-04 | 4:30 pm ms | Psych note cont'd & provocative as the conversation progressed. He threatened to sue writer if he didn't get his |
| | 4:45 pm | ritalin back ed stated he "couldn't wait" to go to court. Speech was loud; demeanor was sarcastic/hostile towards writer; mood ad affect angry/enraged. T.P. logical. Was not distractable during the interview nor was he physically hyperactive. S overt paranoia or delusions but feels writer has singled him out ed is biased against him. S AH/VH. |
| page 3 | error ms | He again denied SI/HI but provocatively stated, "It doesn't matter, I'll be at Bridgewater soon." He also stated "anything I do will be your fault, I am not responsible for what happens." He again denied SI/HI. His insight and judgement are poor - he is blaming others ed does not accept responsibility for his behavior. Remains future oriented re legal issues. |

A/① ETOH dependence - in forced remission
② Poly substance abuse - in forced remission, c recent misuse of medications ed acknowledgement to nursing staff that he checks his medication.
③ ADD - subjectively symptomatic p̄ d/c of ritalin but unwilling to try alternatives to ritalin.

7113W 1/95

⟶

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: Mucci, John    ID # AP 9402    D.O.B. 1-10-71

| DATE | TIME | NOTES |
|------|------|-------|
| | | Psychs — note continued |
| 11-16-04 | 5pm | ④ Sleep disturbance — ? associated c̄ ADD vs another problem (1° sleep disturbance d/o; adj d/o; early mood (AM) sx of d/o). |
| | P/ | Continue wellbutrin + prozac + remeron. Add elavil 25mg and ↑ as clinically indicated and tolerated. If elavil effective would then d/c remeron. |
| page 3/3 | | F/u in 1-3 mo cl prn. |
| | | Case was discussed on 11-15-04 c̄ Dr. Ken Appelbaum, today c̄ MH director, nursing staff, and MH staff. M. Smith, MD |

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
_____
Institution

NAME: Mucci, John          ID # W8 3736   D.O.B. 1-10-71

| DATE | TIME | Psych                                                                 NOTES |
|------|------|-----------------------------------------------------------------------------|
| 1-04-05 | 5:15pm | Seen @ cell door in SMU in f/u earlier than scheduled 2° to pts request to be seen. Says seroquel 100mg initially helped calm him down @ noc & get to sleep. Now is having trouble initiating sleep and maintaining sleep and feels "amped up" @ noc. Is spending much of his day in bed 2° to boredom. Says he "can't concentrate, can't read." Ø daytime naps. MSE: Polite + cooperative; stood quietly at cell door as he spoke to writer. s̄ PMA or PMR. Good eye contact. s̄ irritability; s̄ lability; s̄ grandiosity; s̄ threatening tone (as opposed to previous visits). Was not depressed, although is s/w anxious re pending O-reports + possible DDU referral. T.P. logical + goal directed. Very much was able to stay focused and attend to the conversation. s̄ paranoia; s̄ delusions; s̄ AH/VH. Denies HI/SI. Was not hypervigilant. Insight + judgement remain poor (based on recent threatening letter that → DDU referral). Externalizes + blames others for his problems. |
|  | A/ | Subjectively reports sx of possible ADD, but no objective evidence of hyperactivity. His functional impairment seems limited to ↓ ability to concentrate when reading. He is also much less irritable and hostile (es̄ cms) and less threatening → |

# UMASS CORRECTIONAL HEALTH

### PROGRESS NOTES

SBCe
_Institution_

NAME: Mucci, John          ID # W8 3736   D.O.B. 1-10-71

| DATE | TIME | NOTES |
|------|------|-------|

Psych — note continued

1-04-05
5:20pm

than he has been since writer has known him. MH staff have noted to writer that he is "quieter" in recent wks. Despite pt's protests to d/c of ritalin, his behavior and mental status actually seem improved. Additionally he is feeling subjective benefit from the Seroquel (calms him down, ↓ racing thoughts).

P) Will ↑ seroquel to 200mg qhs to address residual sleep disturbance + racing thoughts. F/U in 1-3 mo + sooner prn.

M Smith, MD

7113W 1/95

# EXHIBIT 7

# COMMONWEALTH OF MASSACHUSETTS
# BOARD OF REGISTRATION IN MEDICINE



# Prescribing Practices
# Policy and Guidelines

## Adopted August 1, 1989
## Amended December 12, 2001

# COMMONWEALTH OF MASSACHUSETTS
# BOARD OF REGISTRATION IN MEDICINE



**Jane Swift**
Governor

**Jennifer Davis Carey**
Director of Consumer Affairs and Business Regulation

**Peter N. Madras, M.D.**
*Chair*

**Nancy Achin Sullivan**
*Executive Director*

*Members of the Board*

Dorothy Keville, *Vice Chair*
Rafik Attia, M.D., *Secretary*
Mary Anna Sullivan, M.D., *Physician Member*
Martin Crane, M.D., *Physician Member*
Regis Anthony de Silva, M.D., *Physician Member*
Roscoe Trimmier, Jr., J.D., *Public Member*

**Commonwealth of Massachusetts**
**Board of Registration in Medicine**
Ten West Street, Third Floor
Boston, Massachusetts 02111
(617) 727-3086

controlled substances without conducting any physical examinations or after conducting only cursory examinations.[33]

Beyond documenting appropriate medical histories and physical examinations, physicians must maintain medical records that are detailed enough in nature that the physician's clinical reasoning is implicit in his or her documentation. Treatment plans should be explicitly recorded. All patient visits and telephone calls relating to treatment should be documented. Prescriptions should be documented and changes in medications or dosage should be explained. These are, of course, just some of the rudiments of complete medical records.

**DEA Prescription Guidelines**

The Drug Enforcement Administration has issued these general guidelines for prescribers of controlled substances (i.e., Schedules II-V). These guidelines have been endorsed by the American Medical Association.[34] The Board endorses these general guidelines.

1) Controlled substances have legitimate clinical usefulness and the prescriber should not hesitate to consider prescribing them when they are indicated for the comfort and well being of patients.

---

[33] Some specialists, such as psychiatrists in a private office setting, are permitted to prescribe drugs for mental ailments without conducting a physical examination where the general standards of good medical care indicate that a physical examination is not appropriate. Medical doctors, including psychiatrists, are permitted to treat illnesses outside their specialized area of practice where they have adequate training and the proper facilities to do so. However, a psychiatrist in a private office setting who does not have the facilities to conduct a proper physical examination should not be treating physical illnesses (such as back pain) where a physical examination is required.

[34] American Medical Association, Prescribing Controlled Drugs Source Book 90 (1986).

16

2) Prescribing controlled substances for legitimate medical uses requires special caution because of their potential for abuse and dependence.

3) Good judgment should be exercised in administering and prescribing controlled substances so that diversion to illicit uses is avoided and the development of drug dependence is minimized or prevented.

4) Physicians should guard against contributing to drug abuse through injudicious prescription writing practices or by acquiescing to unwarranted demands of some patients.

5) Each prescriber should examine his or her individual prescribing practices to ensure that all prescriptions for controlled substances are written with caution.

6) Physicians should make a specific effort to ensure that patients are not obtaining multiple prescription orders from different prescribers. For further discussion, see page 22-23.


**Further Prescription Guidelines**

The following, more specific guidelines are based upon either the DEA's guidelines; principles the Board articulated in the *Baer* decision or derived from other Board decisions; and, Massachusetts law.

1) *The Prescription Must Be Manually Signed When Written.* The prescription order must be signed by the prescriber when it is written. A rubber stamp signature may not be used.

17

# EXHIBIT 8

# COMMONWEALTH OF MASSACHUSETTS

## DEPARTMENT OF CORRECTION

### SOUZA-BARANOWSKI CORRECTIONAL
### INCIDENT REPORT

**Incident Report # :** 87587    **Incident Time :** 08:50   **Date:** 07/03/2004   **Place Occurred:** L3

**Codes & Subject :** INMATE RELATED     Mental Health Issues/Referal   Contraband Found Drug/Alcohol

**Reported By**    : Hart James R  CO II     **Department:** security      **Reported Date:** 07/03/2004

**Description**    :
At 0850, 7/3/2004, this writer, SGT James Hart, discovered two klonapin tablets concealed in a set of headphones belonging to inmate Houlihan. Houlihan had asked me to pass the headphones to inmate Birks, also housed in L3 under the pretense that he (Houlihan) felt depressed and didn't want them in his cell. As soon as Houlihan saw that I had discovered the klonapin, he called out to Birks, "Forget about it, he found it." Immediately after this incident, I was given a note from RN Cox that had been given to her by inmate Evicci. Evicci stated that the inmate in L3 24 (Houlihan) was passed drugs from another inmate, and that Houlihan was obtaining psych meds by telling mental health that he had psychological issues. Evicci also stated that inmate Birk, Mucci, and Houlihan would pass meds to each other by way of the rec decks. Level three lieutenant and shift commander notified.

At 1015, I conducted a search of L3#16, housing inmate Baker, and discovered 2 tylenol-3 tablets concealed in his laundry bag. Searches of the cells of inmates Birk, Mucci, and Houlihan were all negative.///EOR///

| Person Type | Commit No | Name | Housing Unit |
|---|---|---|---|
| Inmate | W81633 | HOULIHAN JEFF P | H2 |
| Inmate | W82017 | BIRKS BRIAN  JR | |
| Inmate | W60156 | EVICCI WILFRED H | M3 |
| Inmate | W83736 | MUCCI JOHN | L3 |
| Inmate | W81255 | BAKER ROGER P JR | |

**Entered By:**    Hart James R  CO II

**Supervisor :**    Chisholm Kenneth  CO II      **Date:** 07/03/2004
**Comments :**

**Shift Commander:** Brannan James D      **Date:** 07/03/2004
**Comments :**   Inmate Birk was moved to another cell down the tier.

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### SOUZA-BARANOWSKI CORRECTIONAL
### INCIDENT REPORT

**Incident Report # :** 91587      **Incident Time :** 14:45   **Date:** 07/13/2004   **Place Occurred:**      L3

**Codes & Subject  :** INMATE RELATED       Mental Health Issues/Referal
                                            Contraband Found Property Rel:

**Reported By**    : Smith Marianne L  Clinician        **Department:** MH               **Reported Date:** 07/20/2004

**Description**    : ON TUES, JULY 13, 2004 AT APPROXIMATELY 14:45 WRITER WAS SPEAKING TO INMATE JOHN MUCCI
AT THE CELL DOOR IN SMU.  WRITER SPOKE TO MR. MUCCI THROUGH THE SPACE BETWEEN THE
LEFT HAND SIDE OF THE DOOR AND THE WALL.  WRITER NOTICED THERE WAS A LONG STRIP OF A
WHITE GUMMY SUBSTANCE STUCK TO THE INSIDE OF THE DOOR AND A SMALL PAPER MEDICATION
CUP WAS ATTACHED TO THE GUMMY SUBSTANCE.  WRITER ALSO OBSERVED THAT THE PAPER
CUP AND GUMMY SUBSTANCE WOULD NOT BE VISIBLE IF THE DOOR WAS OPENED  AND AN
OFFICER WALKED INSIDE TO INSPECT THE CELL, UNLESS THE OFFICER WAS INSIDE THE CELL AND
THE DOOR WAS CLOSED.  WRITER INFORMED SGT. HART OF WRITER'S OBSERVATION AND SHARED
THE CONCERN THAT INMATES COULD BE HOARDING MEDICATION THIS WAY. EOR

| Person Type | Commit No | Name | Housing Unit |
|---|---|---|---|
| Inmate | W83736 | MUCCI JOHN | L3 |

**Entered By:**    Smith Doug  Mental Health Director

**Supervisor :**                                              **Date:**
**Comments :**

**Shift Commander:** Haverty Scot D
**Comments :**                                               **Date:**   07/20/2004

# COMMONWEALTH OF MASSACHUSETTS

## DEPARTMENT OF CORRECTION

### SOUZA-BARANOWSKI CORRECTIONAL
### INCIDENT REPORT

Incident Report # : 115398    **Incident Time :** 20:15    **Date:** 10/21/2004    **Place Occurred:**    L3

**Codes & Subject :** INMATE RELATED    Threats Inmate v. Staf

**Reported By** : Parker Dawn A  Mental Health Clinician    **Department:** Mental Health    **Reported Date:** 10/21/2004

**Description** : Inmate John Mucci (W83736) requested the crisis mental health clinician on the evening of 10/21/2004. Inmate Mucci expressed dissatisfaction about being both changes in his medication and having to come out of his cell to receive his medication. He indicated he would come out of his cell and kick the medical cart at nursing sta

| Person Type | Commit No | Name | Housing Unit |
|---|---|---|---|
| Inmate | W83736 | MUCCI JOHN | L3 |

**Entered By:**    Parker Dawn A  Mental Health Clinician

**Supervisor :**    Fougere Terrance J  CO II    **Date:**    10/21/2004
**Comments :**    reviewed

**Shift Commander:** Leonard Martin D    **Date:**    10/21/2004
**Comments :**    Inmate Mucci was given meds after this report was written.  He took his meds with out incident.



# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### DISCIPLINARY REPORT

| Inmate | MUCCI, JOHN | Commit No | W83736 | Housing Unit L3 |
|---|---|---|---|---|
| Date | 24-OCT-2004 | D- Report No. | 45193 | Institution SOUZA-BARANOWSKI CORRECTIONAL |

**OFFENSE(S) & CODE NO.:**

01-DISOBEYING AN ORDER, LYING, INSOLENCE
02-VIOLATING ANY DEPARTMENT RULE OR REGULATION
08-CONDUCT WHICH DISRUPTS
11-MISUSE OF AUTHORIZED MEDICATION
19-OBSCENE/ABUSIVE/THREAT LANGUAGE
24-POSS OF ITEMS, NOT AUTHORIZED
33-ATTEMPTING TO COMMIT ANY OFFENSE

**Major** [X]        **Minor** []

**Description of Offense(s)**

At 1230 hrs., 10/24/2004, this writer, SGT James Hart, observed inmate Mucci to disrupt the orderly running of the institution by attempting to hoard medications and by being verbally insolent to staff. Inmate Mucci refused to comply with the mouth check during 1230 medication rounds and threw an empty medication cup back onto the tier. I ordered Mucci placed in restraints and removed from his cell and supervised a search of Mucci's person and cell. The cell search revealed a partially crushed white tablet on a plastic book cover, that tablet identified my medical staff as Klonypin. I also siezed two razor blades and a white pen tube containing white powder residue. Both before and after the search, Mucci made several obscene and threatening comments to me, including, "You're a fucking cunt, Hart, and your wife's a fucking cunt," and "If I didn't have a chance of getting out of here, I'd head-butt one of you motherfuckers." Level three lieutenant notified.///EOR///

| Has Inmate been placed on Awaiting Action Status | Yes [] | No [X] |
|---|---|---|

| Referred to DA | [] Yes | [X] No | Referred to DDU | [] Yes | [X] No |
|---|---|---|---|---|---|

| Reporting Staff | James Hart R | Date 24-OCT-2004 | Time 13:25 |
|---|---|---|---|

**Days off** Wed  Thu

**Shift** 7x3

| Shift Commander | William Ryan | Date 24-OCT-2004 | Time 18:34 |
|---|---|---|---|

| Disciplinary Officer | Joel Maillet P | Date 25-OCT-2004 | Time 07:08 |
|---|---|---|---|

**Results** PLEA GUILTY

| Code Description | Sanctions | Start Date | End Date | # of Units | SS |
|---|---|---|---|---|---|

20041119 09:35

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### DISCIPLINARY REPORT

| Inmate | MUCCI, JOHN | | Commit No | W83736 | Housing Unit L3 |
|---|---|---|---|---|---|
| Date | 24-OCT-2004 | D- Report No. | 45193 | Institution | SOUZA-BARANOWSKI CORRECTIONA |

| | | | |
|---|---|---|---|
| 01-DISOBEYING AN ORDER, LYING INSOLENCE | Loss Telephone | | 60 |
| 02-VIOLATING ANY DEPARTMENT RULE OR REGULATION | Comb W/#1 | | 0 |
| 11-MISUSE OF AUTHORIZED MEDICATION | Dismissed | | |
| 19-OBSCENE/ABUSIVE/THREAT LANGUAGE | Loss Canteen | | 60 |
| 24-POSS OF ITEMS, NOT AUTHORIZED | Loss TV/Radio | | 60    30 Days    suspen |

| Reviewing Authority | | Date | Time |
|---|---|---|---|

20041102 13:13

# COMMONWEALTH OF MASSACHUSETTS

## DEPARTMENT OF CORRECTION

### DISCIPLINARY REPORT

| Inmate | MUCCI, JOHN | | Commit No | W83736 | Housing Unit L3 |
|--------|-------------|--|-----------|--------|-----------------|
| Date | 25-OCT-2004 | D- Report No. | 45249 | Institution | SOUZA-BARANOWSKI CORRECTIONAL |

**OFFENSE(S) & CODE NO.:**

01-DISOBEYING AN ORDER, LYING, INSOLENCE
02-VIOLATING ANY DEPARTMENT RULE OR REGULATION
19-OBSCENE/ABUSIVE/THREAT LANGUAGE

**Major** [X]        **Minor** [ ]

**Description of Offense(s)**

At 1105 hrs, 10/25/04, this writer, SGT James Hart, heard inmate Mucci use obscene language toward a female staff member. Dr. Marianne Smith approached inmate Mucci's cell to inform him of a medication change. Inmate Mucci became irate and verbally abusive to Dr. Smith, stating to her in a loud voice, "We'll see about that, you cunt." Dr. Smith immediately left the tier. Level three lieutenant notified. ///EOR///

**Has Inmate been placed on Awaiting Action Status**      **Yes** [ ]      **No** [X]

**Referred to DA**      [ ] Yes      [X] No      **Referred to DDU**      [ ] Yes      [X] No

**Reporting Staff**          James Hart R          **Date** 25-OCT-2004      **Time** 11:12

**Days off**      Wed  Thu

**Shift**      7x3

**Shift Commander**          William Ryan          **Date** 25-OCT-2004      **Time** 14:56

**Disciplinary Officer**          Joel Maillet P          **Date** 26-OCT-2004      **Time** 06:49

**Results**      PLEA GUILTY

| Code Description | Sanctions | Start Date | End Date | # of Units | SS |
|------------------|-----------|------------|----------|------------|-----|
| 01-DISOBEYING AN ORDER, LYING, INSOLENCE | Comb W/#19 | | | 0 | |
| 19-OBSCENE/ABUSIVE/THREAT LANGUAGE | Isolation | | | 5 | |

**Reviewing Authority**          **Date** _____      **Time** _____