UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN MUCCI, pro se,<br>　　　Plaintiff,<br><br>VS.<br><br>MARIANNE SMITH, M.D.,<br>UMASS MEDICAL,<br>　　　Defendant. | )<br>)<br>)<br>) CIVIL ACTION NO. 04-CV-12726-DPW<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT, MARIANNE SMITH, M.D.'S,
STATEMENT OF UNDISPUTED FACTS IN SUPPORT
OF HER MOTION FOR SUMMARY JUDGMENT**

　　The defendant, Marianne Smith, M.D., submits the following statement of undisputed facts, pursuant to Superior Court Rule 9(A)(b)(5), in support of her Motion for Summary Judgment. No genuine issues of material fact exist which would prevent this Court from granting summary judgment for the defendant at this time. In support thereof, defendant states the following:

　　1.　Dr. Marianne Smith is a psychiatrist employed by UMASS Correctional Health ("UMCH") at the Souza-Baranowski Correctional Center ("SBCC"). (Exhibit 2 attached, ¶3).

　　2.　Dr. Smith's duties at SBCC include providing inmates with psychiatric care, such as regular assessments, diagnostic formulation, treatment plans, monitoring, and consultation. (Exhibit 2, ¶3).

　　3.　Dr. Smith is familiar with the allegations in this matter and has personal knowledge of the medical care and treatment plaintiff received while remanded to the custody of the SBCC. (Exhibit 2, ¶4).

　　4.　The plaintiff, John Mucci, is a pro se prisoner, currently incarcerated at SBCC. (Exhibit 1 attached, Complaint ¶1). He suffers from Adult Attention Deficit Hyperactivity Disorder ("ADHD"). (Exhibit 4 attached, medical records).

961208v1

5. Mr. Mucci's records indicate that he has a history of hoarding ADHD medication. Specifically, on July 3, 2004, MDOC Sergeant James Hart filed an incident report stating that John Mucci was exchanging medication with other inmates by way of "reck decks." (Exhibit 8 attached, disciplinary reports).

6. On July 13, 2004, Doug Smith, the UMCH Mental Health Director, noticed that there was a "long strip of white gummy substance stuck to the inside" of Mr. Mucci's cell door, and a small paper medication cup attached to the gummy substance. Mr. Smith observed that the cup and gummy substance were not visible to guards if the cell door was open. Doug Smith notified Sergeant Hart of these observations and expressed concern that Mr. Mucci might be hoarding medication. (Exhibit 8).

7. On October 24, 2004, licensed practical nurse, Jasen Kavanagh, was informed that inmates were diverting crushed medication. The UMCH Mental Health Coordinator informed Mr. Kavanagh that Mr. Mucci was sticking his Ritalin medication cups to the back of his door. (See Exhibit 3 attached, progress notes by Jasen Kavanagh).

8. On that same day, while Mr. Kavanagh made his medication rounds, plaintiff asked for his Ritalin. When Mr. Kavanagh crushed up the Ritalin and placed it in a cup filled with water, Mr. Mucci became angry and refused the medication, stating "I cheek my medication, you just can't catch me, but that does not give you the right to float my medication in water. And when I do something stupid and hurt myself or rip out, I am not going to be responsible it is going to be your fault." After this exchange, Mr. Kavanagh left without giving plaintiff his Ritalin. (Exhibit 3).

9. When Mr. Kavanagh returned to plaintiff's cell during the noon time medication round, Mr. Mucci asked for his Ritalin in crushed form. Mr. Kavanagh explained to plaintiff that

2

he needed to be cuffed and brought out of his cell to take the Ritalin because he was "cheeking his medication." Id.

10. Plaintiff agreed, but when given his medication, Mr. Mucci pretended to take it, throwing an empty medication cup in the trash. When one of the accompanying MDOC officers went to uncuff plaintiff, he noticed another white medication cup clenched in Mr. Mucci's fist. Upon asking to see what plaintiff was holding, Mr. Mucci refused to open his hand, refused to comply with a mouth check, and threw the cup under his bunk. (Exhibits 3 and 8).

11. The officers removed plaintiff from the cell and searched the bunk, under the supervision of Sergeant Hart. While searching Mr. Mucci's cell, officers discovered a partially crushed white tablet on a plastic book, a white pen tube containing white powder, and two razor blades. (Exhibits 3 and 8).

12. On October 25, 2004, Dr. Smith learned of the prior day's incident. When defendant Smith approached plaintiff to discuss changes to his Ritalin medication, Mr. Mucci became irate and verbally abusive toward her. (Exhibits 2 and 8).

13. DEA guidelines for prescription drug treatment dictates that doctors should take action to prevent patients from misusing or diverting stimulant medication. (Exhibit 7 attached, DEA prescription drug guidelines).

14. Both parties agree that Dr. Smith placed a stop order on plaintiff's Ritalin prescription on October 25, 2004. It should be noted, however, that medical records indicate plaintiff received Ritalin through October 27, 2004. (Exhibit 4 attached, medical records).

15. On November 2, 2004, the MDOC disciplinary board reviewed the accusations of drug misuse and diversion against Mr. Mucci. Concluding that there was insufficient evidence to find plaintiff guilty of misuse, the board dismissed the allegations. (Exhibit 5 attached, sick call slips and notes from plaintiff; Exhibit 8).

3

961208v1

16. On November 16, 2004, Mr. Mucci and Dr. Smith discussed his Ritalin prescription. When plaintiff told Dr. Smith that he felt his Ritalin was unjustly stopped, even after the MDOC disciplinary board dismissed the charges, Dr. Smith explained that her decision to stop the medication was independent of the board's ruling. Dr. Smith told plaintiff that UMCH medical decisions are based on clinical data available to the Health Service Unit, such as staff observations and communications with MDOC staff members. (Exhibit 6 attached, Dr. Smith's progress notes).

17. From November 16, 2004 through January 4, 2005, Dr. Smith met with Mr. Mucci on several occasions. Specifically, she observed that his behavior and mental status had improved. Defendant noted that the Seroquel medication plaintiff was taking in place of the Ritalin seemed to calm Mr. Mucci down, and decreased his racing thoughts and hyperactive behavior. (Exhibit 6).

## CONCLUSION

Based on the foregoing, there are no material facts in dispute in this case with respect to Marianne Smith, M.D., and, therefore, the defendant is entitled to judgment as a matter of law on all claims brought by the plaintiff.

The Defendant,
MARIANNE SMITH, M.D.
By her attorneys,

/S/ Lisa R. Wichter

James A. Bello, BBO #633550
Lisa R. Wichter, BBO #661006
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

I hereby certify that a true copy of the above document was served upon the *pro se* plaintiff by mail on the 9th day of May, 2005.

/S/ Lisa R. Wichter
───────────────────
Lisa R. Wichter

961208v1